[Cite as *In re Sanders*, 2024-Ohio-717.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| IN RE: BRITTIANNI SANDERS | : | APPEAL NO. C-230428<br>TRIAL NO. CQ-2200020 |
| | : | |
| | : | *O P I N I O N.* |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: February 28, 2024


*Ohio Justice and Policy Center* and *Verjine V. Adanalian*, for Petitioner-Appellant,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Respondent-Appellee.

**BERGERON, Presiding Judge.**

{¶1} More than eight years after release from prison and seven years after discharge from post-release control, appellant Brittianni Sanders applied for a Certificate of Qualification for Employment ("CQE"), hoping to pursue a job in medical billing. After hearing Ms. Sanders's testimony and reviewing her petition, the magistrate denied her petition, finding that the fact that she did not have custody of her children constituted clear and convincing evidence that she was not rehabilitated. Ms. Sanders objected to the magistrate's decision and, following a hearing on the matter (where the trial court indicated that she was rehabilitated for some jobs but not others), the trial court adopted the magistrate's findings. Ms. Sanders now appeals, maintaining that the trial court abused its discretion by denying her CQE petition. We agree, and we reverse the trial court's judgment and remand this cause with instructions for the trial court to grant her CQE petition.

I.

{¶2} In June 2011, Ms. Sanders was convicted by guilty plea of endangering children in violation of R.C. 2919.22(B)(1), a felony of the second degree, which disqualified her from employment or occupational licensing in certain fields. The court sentenced her to three years in prison along with five years of post-release control. She was released from incarceration in April 2014, and in April 2015, she was discharged early from post-release control.

{¶3} Following her release from incarceration, Ms. Sanders endeavored to turn her life around. She voluntarily sought out and participated in four years of extensive mental health treatment, including biweekly basic and dialectical therapy, and parenting classes. She serves as a caretaker for her grandfather and has fostered

2

a meaningful relationship with her children. She has undertaken commendable efforts to balance two cleaning jobs—working 60-70 hours per week—in order to make ends meet and to keep up with her child support payments. Yet because of her felony conviction, Ms. Sanders struggles to find better employment opportunities.

{¶4} Hoping to pursue a job in medical billing, in October 2022, Ms. Sanders applied for a CQE pursuant to R.C. 2953.25. At the hearing before the magistrate, Ms. Sanders explained that since her conviction, she sought out and participated in intensive therapy and parenting classes. She also detailed how she worked two jobs and how her felony conviction prevents her from seeking better employment opportunities. When the magistrate briefly inquired about the custody status of her children, Ms. Sanders responded that the paternal family has custody, but she maintains visitation and pays child support. The magistrate denied her petition, finding that her children had not been returned to her and determining that her lack of custody represented clear and convincing evidence that she was not rehabilitated.

{¶5} Ms. Sanders objected, challenging the magistrate's reliance on her lack of custody of her children. At the hearing before the trial court, her counsel clarified the custody status of Ms. Sanders's children: "She is not looking to get custody of her children because her children are in a good place, and she doesn't want to disrupt their peace. She understands as a mother that it would be selfish of her to bring her children to her and have them struggle the way she is struggling."

{¶6} Ms. Sanders discussed her participation in therapy, employment totaling 60-70 hours per week, relationship with her children, and desire to obtain a job in medical billing. The trial court expressed its concern about the ability for Ms. Sanders to potentially pursue a job in childcare or healthcare services if she were

3

granted a CQE, citing the seriousness of her offense as its reason for reluctance. Although, during the hearing, the trial court indicated that Ms. Sanders was "rehabilitated to go into the workforce, except for those two jobs [childcare and healthcare]," it ultimately denied her objection and adopted the magistrate's decision. She now appeals.

II.

{¶7}     In 2012, as part of an effort to reduce collateral consequences (for example, limitations on housing options, educational opportunities, and the ability to obtain gainful employment) and enable ex-offenders to reintegrate into their communities, the Ohio General Assembly passed 2012 Am.Sub.S.B. No. 337. Among other post-conviction reforms, the bill created the CQE under R.C. 2953.25 to "address the impact that collateral [sanctions] had on the ability of persons with criminal records to obtain employment." *In re Bailey*, 2015-Ohio-413, 28 N.E.3d 578, ¶ 6 (8th Dist.).

{¶8}     Notably, a CQE does not guarantee licensure or employment. Rather, it simply removes the automatic disqualification from employment or occupational licensure in certain fields, leaving the ultimate hiring or licensure decision to the applicable decisionmaker to consider on a case-by-case basis. *See* R.C. 2953.25(D)(1). The CQE also "provide[s] immunity for the employer as to [a negligence or other fault] claim if the employer knew of the certificate at the time of the alleged negligence." R.C. 2953.25(G)(2).

{¶9}     Generally, trial court may issue a CQE at its discretion if it finds the applicant established all of the following by a preponderance of the evidence:

(a) Granting the petition will materially assist the individual in

obtaining employment or occupational licensing.

(b) The individual has a substantial need for the relief requested in

order to live a law-abiding life.

(c) Granting the petition would not pose an unreasonable risk to the

safety of the public or any individual.

R.C. 2953.25(C)(3).

{¶10} But if at least three years have passed since the applicant completed their felony detention or supervision, or one year has passed since the applicant completed their misdemeanor detention or supervision, a rebuttable presumption arises in favor of their CQE application. R.C. 2953.25(C)(5)(b)-(c). If the presumption applies, the court should only deny the petition if it finds "by clear and convincing evidence, that the applicant has not been rehabilitated." R.C. 2953.25(C)(6).

III.

{¶11} Turning to Ms. Sanders's sole assignment of error, she maintains that the trial court abused its discretion by denying her petition for a CQE. Essentially, she objects to the trial court's finding of a lack of rehabilitation, challenging the court's reliance on her children's custody status and the seriousness of her prior offense.

{¶12} We review the denial of a CQE petition for an abuse of discretion. *In re Deran*, 2023-Ohio-2902, 223 N.E.3d 790, ¶ 12 (6th Dist.), citing R.C. 2953.25(C)(8) ("If a court of common pleas * * * denies the petition, the individual may appeal the decision to the court of appeals only if the individual alleges that the denial was an abuse of discretion on the part of the court of common pleas."). A trial court abuses its discretion when it "exercis[es] its judgment, in an unwarranted way, in regard to a

5

matter over which it has discretionary authority." *Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶13} No one disputes that Ms. Sanders satisfied the time requirements to qualify for the rebuttable presumption under R.C. 2952.25(C)(5). Consequently, the trial court could deny her petition only if "the evidence * * * rebut[ted] the presumption of eligibility for issuance by establishing, by clear and convincing evidence, that [she had] not been rehabilitated." R.C. 2953.25(C)(6).

{¶14} Rebutting the presumption of eligibility requires a significant showing of proof. A showing by clear and convincing evidence requires "more [certainty] than a preponderance of the evidence," but not as much certainty as "beyond a reasonable doubt." *State ex rel. Griffin v. Doe*, 165 Ohio St.3d 577, 2021-Ohio-3626, 180 N.E.3d 1123, ¶ 5, citing *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 14. "Clear and convincing evidence produces 'in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State v. Ingels*, 1st Dist. Hamilton Nos. C-180469, C-180470 and C-180471, 2020-Ohio-4367, ¶ 20, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Thus, the state must overcome a high hurdle to rebut the presumption in favor of a CQE.

{¶15} With the clear and convincing evidence standard in mind, we begin our analysis by examining the judicial entries. The magistrate cited only one basis—Ms. Sanders's lack of custody of her children—for its determination that she was not rehabilitated. And the trial court adopted the magistrate's decision (without making any additional written findings). The magistrate's investigation into the children's custody status was limited to the following exchange:

6

Q: [D]o you have custody of all five children right now?

A: I get visitation.

Q: Who has custody?

A: Family does. Paternal side. I do pay child support and stuff like that.

{¶16} As part of its evaluation of a CQE petition, a court "may order any report, investigation, or disclosure by the individual that the court believes is necessary for [it] to reach a decision on whether to approve the individual's petition." R.C. 2953.25(C)(1). Yet the record indicates that neither the magistrate nor the trial court sought family court records or gathered evidence showing that Ms. Sanders was recently denied (or even sought) custody of her children.

{¶17} And at the hearing on her objections to the magistrate's decision, when the trial court inquired about the custody status of the children, counsel responded, "She is not actively looking to get custody of her children because her children are in a good place, and she doesn't want to disrupt their peace." The record does not contain any contrary evidence.

{¶18} Further, on appeal, the state failed to seriously defend the custody issue as a basis for finding a lack of rehabilitation, and we similarly have trouble understanding how her lack of custody impacts the overall CQE calculus on the record before us. To be sure, if she sought custody and was denied based on reasons that might reflect on-going mental health, addiction, or related challenges, that would be one thing. But here, where she did not even *seek* custody, the court seemingly faults her for that choice (which strikes us as a rational one by Ms. Sanders under the circumstances). Regardless, based on this record, the custody status of Ms. Sanders's

7

children did not constitute clear and convincing evidence that she was not rehabilitated.

{¶19}  Without the custody issue constituting clear and convincing evidence, we examine the transcript of the proceedings before the trial court, which repeatedly relied on the seriousness of the underlying offense as a basis for finding Ms. Sanders was "rehabilitated to go into the workforce, except for those two [healthcare and childcare] jobs."

{¶20}  During the hearing, the trial court and Ms. Sanders's counsel had the following exchange:

> Trial court: So if you can qualify my granting a CQE and say for medical billing, I'll grant it.  I simply do not feel comfortable saying she's rehabilitated to have the option to go into health care is my thing. * * * Any job other than health care and dealing with children, anything other than those two, I'm totally good with.  So if somehow we can make that qualification, I'm great.  But if we can't, I'm not.
>
> Counsel: So to be clear, this Court is saying that Ms. Sanders is rehabilitated for some jobs, but not rehabilitated for other jobs?
>
> Trial court: Yes.
>
> Counsel: How can she be rehabilitated and not rehabilitated at the same time?
>
> Trial court: Because of the seriousness.  And feel free to appeal me, but this is how I feel.  Because of the seriousness of the offense of what happened in this situation - - okay? - - I don't think she's rehabilitated enough.

{¶21} To determine if the trial court erred in finding that the seriousness of Ms. Sanders's prior offense alone was clear and convincing evidence that she was not rehabilitated, we must consider the plain language of R.C. 2953.25. " 'Because our role as members of the judiciary is not * * * to declare that the General Assembly by way of inadvertence or inattention made a slip of the pen in an attempt to rewrite the statute in a manner that is pleasing to us, we must adhere to the plain language of the statute.' " *State v. Dickey*, 2023-Ohio-705, 211 N.E.3d 693, ¶ 13 (1st Dist.), quoting *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 40.

{¶22} As defined by R.C. 2953.25(A)(1), a "collateral sanction" is:

a penalty, disability, or disadvantage that is related to employment or occupational licensing, however denominated, as a result of the individual's conviction of or plea of guilty to an offense and that applies by operation of law in this state whether or not the penalty, disability, or disadvantage is included in the sentence or judgment imposed.

A person may file a CQE petition if they are subject to one or more collateral sanctions, resulting from a conviction or guilty plea. R.C. 2953.25(B).

{¶23} Relief from collateral sanctions, as defined by the General Assembly, is a type of post-conviction relief. Thus, the General Assembly determined, notwithstanding a person's underlying offense, that they may qualify for a CQE. If the legislature believed certain offenses should disqualify individuals from CQE eligibility altogether, it would have exempted such offenses from CQE eligibility. R.C. 2953.25 contains no such exemptions that would apply to Ms. Sanders's offense.

**{¶24}** Further, the General Assembly's creation of the presumption for eligibility demonstrates its focus on an applicant's progress *following* their release. In 2020, the General Assembly amended the statute to create a rebuttable presumption that applicants are entitled to a CQE if three years have passed since completing their felony detention or supervision, or one year has passed since completing their misdemeanor detention or supervision. *See* R.C. 2953.25(C)(5)(b)-(c). Thus, if an applicant files a CQE application after the applicable waiting period and sufficient time has elapsed from the date of release, their petition "shall be denied only if the court * * * finds that the evidence reviewed * * * rebuts the presumption of eligibility for issuance by establishing, by clear and convincing evidence, that the applicant has not been rehabilitated." R.C. 2953.25(C)(6).

**{¶25}** The General Assembly oriented this presumption around rehabilitation—an applicant should be granted a CQE unless there is clear and convincing evidence that the applicant has not been rehabilitated. *See* R.C. 2953.25(C)(5)-(6). The General Assembly's focus on rehabilitation illustrates its concern with the applicant's progress *following* release, not the previous offense itself. The seriousness of the prior offense may serve as a baseline for rehabilitation, informing what steps a person may need to take in order to be rehabilitated. But in light of the plain language of the statute, the prior offense alone cannot be dispositive.

**{¶26}** And regardless, examining the full record, we cannot find any evidence—let alone clear and convincing evidence—suggesting that Ms. Sanders was not rehabilitated. Indeed, she seemed to go to extraordinary lengths to turn her life around, which is something that should be commended rather than criticized. Ms. Sanders testified to the following: following her release, she participated in four years

10

of both basic and dialectical therapy (from which she has subsequently "graduated") to address her mental health diagnoses, she works two cleaning jobs (totaling 60-70 hours per week), she is a caretaker for her grandfather, and she is active with her children. None of this testimony was contested. And although at one point during the hearing the trial court expressed concern about Ms. Sanders's mental health conditions, Ms. Sanders testified that she had been released from therapy after four years of intensive treatment, and the record did not contain any countervailing evidence of current or untreated mental health concerns.

{¶27} Because we cannot find any evidence in the record from which the trial court could draw the conclusion that Ms. Sanders was not rehabilitated, we hold the trial court abused its discretion in denying her CQE petition. Thus, we remand the matter to the trial court with instructions to grant the CQE.

\* \* \*

{¶28} Considering the foregoing analysis, we sustain Ms. Sanders's sole assignment of error. We reverse the judgment of the trial court and remand this matter to the court with instructions to grant Ms. Sanders's CQE petition.

Judgment reversed and cause remanded.

**KINSLEY, J.,** concurs.
**WINKLER, J.,** concurs separately.

**WINKLER, J.,** concurring separately.

{¶29} I concur in the majority's judgment reversing the trial court's denial of Ms. Sanders's CQE petition because I agree that the trial court did not comply with the statutory requirements of R.C. 2953.25(C)(5)-(6). But I write separately because I

11

would remand the matter to the trial court to apply the rebuttable presumption of R.C. 2953.25(C)(6) in light of this opinion.

Please note:

The court has recorded its entry on the date of the release of this opinion.