[Cite as *State v. J.B.*, 2024-Ohio-1879.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. | C-230499 |
| | | | C-230500 |
| and | : | | C-230501 |
| | | | C-230502 |
| CITY OF CINCINNATI, | : | | C-230503 |
| | | | C-230504 |
| Plaintiffs-Appellees, | : | | C-230505 |
| | | TRIAL NOS. | 12CRB-21204 |
| | : | | C-12CRB-29845 |
| vs. | | | 14CRB-14457 |
| | : | | C-14CRB-14902 |
| | | | C-14CRB-25518 |
| J.B., | : | | C-15CRB-27045-A and B |
| | | | C-16CRB-16349 |
| Defendant-Appellant. | : | | |
| | : | | |
| | | *O P I N I O N.* | |
| | : | | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: May 17, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee State of Ohio,

*Emily Smart Woerner*, City Solicitor, *William T. Horsely*, Chief Prosecuting Attorney, and *Julie Myers*, Assistant Prosecuting Attorney, for Plaintiff-Appellee City of Cincinnati,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} From 2012 through 2016, defendant-appellant J.B. entered guilty pleas to seven misdemeanor charges in Hamilton County. In 2023, she filed pro se applications to seal the records of these convictions to facilitate professional licensure and employment opportunities as she completes her Doctor of Social Work ("DSW") degree. Although neither the state nor the city objected, the trial court refused to seal her records, relying on her subsequent misdemeanor convictions in 2018 and 2019 and a state interest that the state never articulated (and that a trial court could utilize to override an applicant's need for sealing in virtually every case). J.B. now appeals, maintaining that the trial court erred when it denied her applications to seal the records of her misdemeanor convictions. We agree, and we accordingly sustain J.B.'s sole assignment of error, reverse the trial court's judgments, and remand the matter to the trial court with instructions to seal the records of J.B.'s seven misdemeanor convictions at issue in this case.[1]

I.

{¶2} In 2012, J.B. was charged with theft and accused of shoplifting merchandise valued at $267 from Meijer and merchandise valued at $224 from Target. For each charge, she entered a guilty plea to an amended charge of unauthorized use of property, a fourth-degree misdemeanor. She received community control sentences for both charges, but because she violated the terms and conditions of community control, her probation was terminated unsuccessfully.

{¶3} In 2014, J.B. was twice again charged with theft, was additionally charged with obstructing official business, and was accused of lying at a crime scene.

---

[1] We note that J.B. also applied for and was denied record sealing regarding one dismissal. Although J.B. did not raise that issue on appeal, given our conclusions below, *a fortiori* the dismissal should have been sealed.

Regarding the theft charges, she was accused of shoplifting merchandise valued at $179 from Meijer and of stealing an envelope containing $700 from an individual at a gas station. Regarding the Meijer theft, she entered a guilty plea to an amended charge of unauthorized use of property, a fourth-degree misdemeanor. For the other theft, she entered a guilty plea to an amended charge of attempted theft, a second-degree misdemeanor. And regarding the obstruction charge, she entered a guilty plea to an amended charge of disorderly conduct, a fourth-degree misdemeanor. In all three cases, she received community control sentences but subsequently violated the terms and conditions of community control. Thus, her probation was terminated unsuccessfully, and she was incarcerated.

{¶4} In 2015, J.B. was charged with obstructing official business and resisting arrest when she resisted the efforts of police officers to place her in handcuffs. She entered a guilty plea to the resisting arrest charge, a second-degree misdemeanor, and the obstruction charge was dismissed. The court ordered her to pay a fine and costs.

{¶5} In 2016, J.B. was charged with obstructing official business, a second-degree misdemeanor, after she gave police officers a false name during an investigation to conceal the fact that she had an outstanding warrant for her arrest. She entered a guilty plea. The court ordered her to pay a fine and costs.

{¶6} Once in 2018 and once in 2019, J.B. was again charged with and convicted of misdemeanor theft of an amount less than $1,000 in Kettering and Warren respectively. The details of these convictions (including the amounts of the thefts) are not contained in the record, nor are those convictions at issue in this appeal.

{¶7} In June 2023, seven years after the most recent offense at issue and four years after her cessation of criminal activity, J.B. filed pro se applications to have the records of seven misdemeanor cases from 2012 through 2016 (outlined above) and several traffic matters sealed. In August 2023, the trial court held a hearing on her applications for sealing. Some of the charges were prosecuted by the city prosecutor's office, while the county prosecutor's office prosecuted others. Both prosecutors attended the hearing, and neither the state nor the city voiced any objection to J.B.'s request. Additionally, the prosecuting witnesses in the cases J.B. sought to have sealed were contacted prior to the hearing and had an opportunity to object, but all declined to appear.

{¶8} During the hearing, the court asked J.B. why she sought the applications, what type of work she hoped to pursue, and if she was seeking a particular job opportunity or "just trying to be proactive." In response to these questions, J.B.—who was not represented by counsel—shared that she was seeking record sealing because she was completing her DSW and would need to complete a background check for her social work license. Further, she noted that "[i]t's just not me anymore," essentially explaining that she had turned her life around. And she informed the court that she had already sought and was granted a certificate of qualification for employment ("CQE") in 2021. She shared that while she is not currently seeking new employment, she had previously applied for a job with the "Justice Center" that required a background check, and she was not hired for the position, noting her "background really mattered for the position" and stating, "that's what kind of sparked me to get this going."

{¶9} The trial court noted that the traffic matters were not legally eligible for record sealing. It then indicated that it wished to have additional time to consider the applications, continuing the matter for entry and decision. Ultimately, the trial court denied all seven of J.B.'s applications. In pronouncing its decisions, the court first concluded that she was not rehabilitated. It stated that "[n]o evidence of rehabilitation was offered aside from the applicant's general statement, 'that's just not me anymore' " and referenced the number of misdemeanor convictions on her record.

{¶10} Then, the trial court weighed J.B.'s interest in having the records sealed against the government's interest:

Although the court appreciates the applicant's desire to pursue employment and better her circumstances without disclosing such records to potential employers, the court cannot find that her interest outweighs the government interest in protecting the public's "need to know." The facts related to this offense involve dishonesty [or concern a crime against justice and public administration]. The applicant's profession involves a position of trust both in terms of the clients she serves and the employer. They have a right to know of these proceedings and address them as they see fit. Ultimately, they are able to choose for themselves whether or not [J.B.] is worthy of their trust.

{¶11} J.B. now challenges the denial of her seven misdemeanor record sealing applications.

II.

**{¶12}** In her sole assignment of error, J.B. contends that the trial court abused its discretion when it denied her applications to seal the records of her misdemeanor convictions. Specifically, she argues that the trial court based its decisions on the number of and the nature of her convictions.

**{¶13}** This court reviews a trial court's decision to deny an application for criminal record sealing for an abuse of discretion. *See State v. A.S.*, 2022-Ohio-3833, 199 N.E.3d 994, ¶ 5 (1st Dist.), citing *State v. McVean*, 1st Dist. Hamilton Nos. C-210459 and C-210460, 2022-Ohio-2753, ¶ 7. An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah,* 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

**{¶14}** Criminal record sealing " 'is an act of grace' created by the state." *A.S.* at ¶ 5, quoting *State v. R.S.*, 1st Dist. Hamilton Nos. C-210169, C-210170, C-210171, C-210172 and C-210173, 2022-Ohio-1108, ¶ 10. As part of the General Assembly's effort to reduce collateral consequences (for example, limitations on housing options, educational opportunities, and the ability to obtain gainful employment) and enable ex-offenders to reintegrate into their communities, "R.C. 2953.32 provides persons with qualifying offenses who have demonstrated rehabilitation with a second chance, so that they can avoid these collateral consequences of a criminal record and the associated obstacles to becoming a thriving and productive member of society." *Id.* at ¶ 10, citing *R.S.* at ¶ 10.

**{¶15}** R.C. 2953.32 "governs a trial court's decision to grant or deny an application to seal a record of conviction[.]" *Id.* at ¶ 6. The Ohio legislature has

continually expanded eligibility for record sealing, and Ohio courts have responded to the legislature's expansion of relief from collateral consequences. *See id.* at ¶ 7, quoting *State v. Young*, 5th Dist. Morrow No. 2021 CA 0009, 2022-Ohio-593, ¶ 21 ("R.C. 2953.32 is * * * 'construed liberally to promote [its] purpose and assist the parties in obtaining justice.' "). The most recent sweeping changes to record sealing and expungement in Ohio took effect in April 2023. *See* 2022 Am.Sub.S.B. No. 288. The amendments included enacting new provisions permitting applications for expungement (where the criminal record is destroyed from all records), shortening waiting periods, and requiring the court to hold a hearing between 45 and 90 days after the filing date of an application. *See id.* Additionally, trial courts were previously required to consider the number of convictions to determine if an applicant was eligible for record sealing. *See former* R.C. 2953.31(A)(1). But now, the number of misdemeanor convictions on an applicant's record does not render them ineligible for relief. *See* R.C. 2953.31; R.C. 2953.32(A)(1). J.B. applied to seal her criminal records in June 2023 (after the most recent changes had taken effect).

{¶16} Under R.C. 2953.32(D)(1), the trial court must perform the following assessment before granting an application for record sealing or expungement:

(a) Determine whether the applicant is pursuing sealing or expunging a conviction of an offense that is prohibited * * *;

(b) Determine whether criminal proceedings are pending against the applicant;

(c) Determine whether the applicant has been rehabilitated to the satisfaction of the court;

(d) If the prosecutor has filed an objection in accordance with division (C) of this section, consider the reasons against granting the application specified by the prosecutor in the objection;

(e) If the victim objected, pursuant to the Ohio Constitution, consider the reasons against granting the application specified by the victim in the objection;

(f) Weigh the interests of the applicant in having the records pertaining to the applicant's conviction or bail forfeiture sealed or expunged against the legitimate needs, if any, of the government to maintain those records;

(g) Consider the oral or written statement of any victim, victim's representative, and victim's attorney, if applicable[.]

**{¶17}** Here, neither the victim nor the prosecutors objected to the applications, no victim statements were submitted to the court, and the trial court did not consider any pending criminal proceedings (because none existed). Indeed, of that entire list, the court found only two factors that pointed away from record sealing—rehabilitation and whether the government's interest in maintaining the records outweighed J.B.'s interest in sealing her records.

**{¶18}** We first address the trial court's finding of a lack of rehabilitation. In its written decisions, the court explained, "No evidence of rehabilitation was offered aside from the applicant's general statement, 'that's just not me anymore.' " It then referenced her subsequent offenses (with the most recent offense having occurred in 2019) and violations of community control following her offenses in 2012 and 2014.

{¶19} J.B.'s statement—"that's just not me anymore"—demonstrated her acknowledgement that she has changed since the cessation of her criminal activity. And contrary to the trial court's decisions, she offered evidence of rehabilitation aside from this statement. She shared that she works as a licensed parenting counselor and is currently pursuing her DSW. J.B. is going into a field with a strong demonstrated public need. And through her career, she will help people navigate challenging times.

{¶20} She also shared that she previously applied for and was granted a CQE. These efforts to obtain and maintain employment in a field that benefits the community are commendable. CQEs are a form of postconviction relief designed to assist persons with criminal records in obtaining employment by "remov[ing] the automatic disqualification from employment or occupational licensure in certain fields." *In re Sanders*, 1st Dist. Hamilton No. C-230428, 2024-Ohio-717, ¶ 8, citing R.C. 2953.25(D)(1). By granting her CQE petition, a court determined that the petition would assist her in obtaining employment or licensing, that she had a substantial need for the relief, and that granting the petition would not pose an unreasonable risk to public safety. *See* R.C. 2953.25(C)(3). Her criminal activity ceased two years before she sought her CQE and four years prior to the application for record sealing at issue.

{¶21} The trial court also pointed to the number of her convictions as evidence of her lack of rehabilitation. In its denial of her application regarding her earliest offense, the trial court stated: "The probation department reports that since this 2012 conviction, the applicant was subsequently charged and convicted of numerous offenses in Hamilton County * * * as well as Theft in at least two other jurisdictions in Ohio in 2018 and 2019." And in its denial of each application

regarding a subsequent conviction, it continued to reference every conviction that followed the one at issue.

{¶22} But this court has previously held that "a court cannot deny an application to seal based solely on the * * * number of offenses, if the records of those offenses are eligible for sealing under the law." *State v. G.H.*, 1st Dist. Hamilton Nos. C-230013 and C-230014, 2023-Ohio-3269, ¶ 22. And the legislature seemingly indicated its agreement with our conclusion in *G.H.* Since *G.H.*, the General Assembly expanded eligibility for record sealing: the number of misdemeanor convictions on an applicant's record no longer renders them ineligible for relief. *See* R.C. 2953.32(A)(1). J.B. applied to seal her criminal records after the most recent changes had taken effect. And while the state argues that this court should reconsider our holding in *G.H.*, we abide by the prior decision of this court and acknowledge the Ohio legislature's intent to expand record sealing as an avenue for relief. The Ohio legislature has permitted qualified applicants to seek record sealing relief for an unlimited number of eligible misdemeanor offenses, acknowledging that individuals may quickly accumulate misdemeanors. Thus, the focus of rehabilitation is the applicant's progress *following* the last offense, not simply the number of previous offenses.

{¶23} The city and the state maintain that pursuant to R.C. 2953.32(D)(1)(h)(iii), the court must consider "the cessation or continuation of criminal behavior." But that analysis is limited to cases involving offenses under R.C. 2953.36. *See* R.C. 2953.32(D)(1)(h). As J.B.'s convictions fall outside the scope of R.C. 2953.36, the R.C. 2953.32(D)(1)(h) analysis was inapplicable. Instead, in considering J.B.'s rehabilitation status, the court had to "[d]etermine whether the applicant ha[d] been rehabilitated to the satisfaction of the court." R.C. 2953.32(D)(1)(c). And

regardless, according to the record, J.B. ceased criminal behavior four years before applying for record sealing. Thus, the court's finding that J.B. was not sufficiently rehabilitated was unsupported by the record.

{¶24} Turning to the trial court's second basis for its denials, it concluded that the government's interest in maintaining the records of J.B.'s convictions outweighed J.B.'s interest in sealing the records. Specifically, the trial court weighed J.B.'s interest in advancing her career in social work against the government's interest in "maintain[ing] public records of criminal proceedings and thereby safeguard[ing] the public's 'right to know.' "

{¶25} "The applicant has the burden 'of demonstrating that [her] interests in having the records in the case[s] sealed are at least equal to the legitimate governmental need to maintain the record.' " *A.S.*, 2022-Ohio-3833, 199 N.E.3d 994, at ¶ 12, quoting *State v. Haney*, 70 Ohio App.3d 135, 139, 590 N.E.2d 445 (10th Dist.1991). During the hearing, J.B. shared that she was previously denied employment based on her criminal record. When she applied for a job with the "Justice Center," she had to complete a background check. She stated that her "background really mattered for the position" and that she was ultimately not hired for the job. She even noted the experience is what "sparked [her] to get [the record sealing process] really going." She also shared that she is in the process of pursuing her DSW and will have to complete a background check to obtain her license.

{¶26} Notably, likely in recognition of the legislature's expansion of record sealing, neither the state nor the city objected to J.B.'s application for record sealing. Nor did they advance any state interest in maintaining public access to her records. While they defend the trial court's denial on appeal, by not objecting below, the city

and state failed to give the adversarial system a chance to function. They did not make J.B. aware of any basis for an objection, denying her the opportunity to address their concerns below. Under such circumstances, the trial court typically should not place great weight on a governmental interest that the government has not bothered to identify.

{¶27} And the court's finding improperly relied on the nature of the offenses, noting that her offenses either involved dishonesty or were "a crime against justice and public administration." Because as a social worker, her "profession involves a position of trust[,]" the court concluded that her clients and employers have a right to know of the proceedings. This court has " 'previously held that the nature of the offense cannot provide the sole basis to deny an application to seal records' " because the legislature has already decided which offenses are eligible for record sealing. *G.H.*, 1st Dist. Hamilton Nos. C-230013 and C-230014, 2023-Ohio-3269, at ¶ 22, quoting *R.S.*, 1st Dist. Hamilton Nos. C-210169, C-210170, C-210171, C-210172 and C-210173, 2022-Ohio-1108, at ¶ 29.

{¶28} While we acknowledge that the public has an interest in knowledge of criminal records, the Ohio legislature would have exempted the offenses at issue from eligibility for record sealing if that interest was paramount. *See, e.g., State v. M.H.*, 8th Dist. Cuyahoga No. 105589, 2018-Ohio-582, ¶ 19. Instead, the Ohio legislature has not exempted any of the misdemeanor offenses at issue from eligibility for record sealing.

{¶29} Although the court concluded that the government's interest in maintaining the records outweighed J.B.'s interest in having the records sealed, the record points in the other direction. J.B. has a strong interest in sealing the records of

her convictions. Since her convictions, she has applied for and been granted a CQE. She is pursuing her DSW and the applicable state licensure to further her career in social work, and her license is jeopardized by the required background check. She has not had any further contact with the criminal justice system since 2019, four years before she applied for record sealing, and all of her convictions were for misdemeanors. The state and city both declined to offer any interest in response and did not oppose the sealing of the records.

{¶30} On this record, the trial court failed to invoke a sufficient government interest to support its decisions to deny J.B.'s applications to seal her records. And as explained above, the court's finding that J.B. was not sufficiently rehabilitated was unsupported by the record. Therefore, the trial court's denial of her applications constituted an abuse of discretion.

\*     \*     \*

{¶31} In light of the record and the foregoing analysis, we sustain J.B.'s sole assignment of error, reverse the trial court's judgments, and remand the matter to the trial court with instructions to seal the records of J.B.'s seven misdemeanor convictions at issue in this case.

Judgments reversed and cause remanded.

**CROUSE** and **KINSLEY, JJ.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.