[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. J.B.*, Slip Opinion No. 2026-Ohio-1405.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1405

THE STATE OF OHIO, APPELLANT, ET AL. *v.* J.B., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. J.B.*, Slip Opinion No. 2026-Ohio-1405.]**

*Criminal law—R.C. 2953.32—Application for sealing of records of convictions—R.C. 2953.32 does not prohibit trial court from considering number and nature of an applicant's convictions when balancing interests of government and applicant—State's failure to object to application does not prohibit trial court from considering government's interest in maintaining records pertaining to applicant's conviction—Court of appeals improperly substituted its judgment for trial court's when conducting abuse-of-discretion review of trial court's judgment on application to seal record of conviction—Court of appeals' judgment reversed in part.*

(No. 2024-0951—Submitted June 24, 2025—Decided April 22, 2026.)

APPEAL from the Court of Appeals for Hamilton County,

Nos. C-230500 and C-230502 through C-230505, 2024-Ohio-1879.

_____

DETERS, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, HAWKINS, and SHANAHAN, JJ., joined. BRUNNER, J., concurred in part and dissented in part, with an opinion.

**DETERS, J.**

{¶ 1} R.C. 2953.32 provides the means by which a person who has been convicted of misdemeanors may apply to have the records of those convictions sealed. The statute gives the trial court that reviews the application the discretion to grant or deny sealing. An appellate court reviews the trial court's decision on an application to seal for abuse of discretion.

{¶ 2} In this case, J.B. filed applications in the Hamilton County Municipal Court to have the records of seven misdemeanor convictions sealed. Two cases were prosecuted by the Cincinnati city prosecutor and five were prosecuted by the county prosecutor. Following a hearing on the applications, the trial court denied them. The court concluded that J.B. had not demonstrated that she was rehabilitated and that the government's interest in keeping the records public outweighed J.B.'s interest in sealing them. When J.B. appealed, the First District Court of Appeals reversed the judgments of the trial court. Cincinnati did not appeal the First District's judgment ordering sealing of J.B.'s convictions for the two cases of unauthorized use of property that the city had prosecuted. The State appealed its five cases to this court, and we conclude that in reversing the trial court's judgment, the First District improperly substituted its judgment for that of the trial court. We therefore reverse the judgment of the First District in part.

## I. BACKGROUND

{¶ 3} In December 2012, J.B. pleaded guilty to two misdemeanor counts of unauthorized use of property for offenses committed in July and September of that year. Nearly two years later, in September 2014, she pleaded guilty to two more misdemeanor counts: an April 2014 attempted theft and a May 2014 unauthorized

use of property. In January 2015, she pleaded guilty to having committed disorderly conduct in August 2014. In July 2016, she pleaded guilty to having resisted arrest in October 2015. And in August 2016, she pleaded guilty to having obstructed official business two months earlier.

{¶ 4} J.B. filed applications to seal the records of those convictions in June 2023. Neither Cincinnati nor the State of Ohio opposed the applications at the trial court. At the hearing on her applications, the trial court asked J.B. why she was seeking to have her convictions sealed, and J.B. responded, "I'm seeking just, Your Honor, because I am (indiscernible) in social work and I will have to deal with a background check for the State, and I just don't feel as if I could get (indiscernible) if every single time I move forward in my professional (indiscernible).[1] It's just not me anymore." J.B. added that she is a licensed parenting counselor serving an internship with the State. She told the judge that she was not currently seeking a new position but that she applied to have her convictions sealed after unsuccessfully pursuing a position in the Hamilton County Justice Center. According to J.B., her "background really mattered for the position."

{¶ 5} Following the hearing, the trial court denied the applications. In each entry, the trial court noted the underlying facts of the conviction. For example, regarding J.B.'s attempted-theft conviction, the court noted that J.B. had been charged with theft for taking an envelope containing $700 from a person at a gas station. She subsequently pleaded guilty to attempted theft, and the court ordered her to pay restitution and imposed community control. When J.B. later violated the conditions of her community control, the trial court had incarcerated her.

{¶ 6} In its denial of J.B.'s applications, the trial court also noted the number of convictions she had. That number included not only her convictions eligible for sealing under R.C. 2953.32(B) but also some traffic-law convictions

---

1. The original transcript of the hearing includes several "indiscernible" parentheticals that reflect portions of J.B.'s statements that the court reporter did not hear.

that J.B. said she had been advised were probably not eligible for sealing, including leaving the scene of an accident, and two thefts outside Hamilton County in 2018 and 2019.

{¶ 7} Regarding rehabilitation, the court determined that J.B. presented no evidence beyond her statement, "It's just not me anymore." And the trial court explained that J.B.'s interest in pursuing employment without having to disclose her past convictions—which involved either dishonesty or offenses against justice and public administration—did not outweigh the "government interest in protecting the public's 'need to know.'" The court stated, "The applicant's profession involves a position of trust both in terms of the clients she serves and the employer. They have a right to know of these proceedings and address them as they see fit. Ultimately, they are able to choose for themselves whether or not [J.B.] is worthy of their trust."

{¶ 8} J.B. appealed to the First District, arguing that the trial court had abused its discretion in denying the applications for sealing. The First District reversed the trial court's judgment and remanded the case to the trial court to seal J.B.'s convictions. 2024-Ohio-1879, ¶ 31 (1st Dist.). With respect to the trial court's finding as to J.B.'s lack of rehabilitation, the First District explained, "J.B.'s statement—'that's [sic, 'It's] just not me anymore'—demonstrated her acknowledgement that she has changed since the cessation of her criminal activity," *id.* at ¶ 19. And in the court of appeals' view, J.B. offered other evidence of her rehabilitation: "She shared that she works as a licensed parenting counselor and is currently pursuing her DSW [doctorate of social work]." *Id.* The court accorded weight to J.B.'s having obtained a certificate of qualification for employment ("CQE"), which it described as "a form of postconviction relief designed to assist persons with criminal records in obtaining employment." *Id.* at ¶ 20. And the First District faulted the trial court for considering the number of convictions J.B. has.

*Id.* at ¶ 21. Thus, the court of appeals concluded that the trial court's finding that J.B. was not sufficiently rehabilitated was not supported by the record. *Id.* at ¶ 30.

{¶ 9} Addressing the trial court's conclusion that the government's interest in keeping the records public outweighed J.B.'s interest in having them sealed, the court of appeals suggested that "the trial court typically should not place great weight on a governmental interest that the government has not bothered to identify." *Id.* at ¶ 26. According to the court of appeals, the trial court's finding regarding the government's interest "improperly relied on the nature of the offenses," *id.* at ¶ 27, in light of the First District's previous holding that "the nature of the offense cannot provide the sole basis to deny an application to seal records" (cleaned up), *id.* Rejecting the trial court's conclusion, the First District determined that J.B. had a strong interest in having her convictions sealed: "Since her convictions, she has applied for and been granted a CQE. She is pursuing her DSW and the applicable state licensure to further her career in social work, and her license is jeopardized by the required background check." *Id.* at ¶ 29. Thus, it concluded, the trial court had abused its discretion when it "failed to invoke a sufficient government interest to support its decisions to deny J.B.'s applications to seal her records." *Id.* at ¶ 30.

{¶ 10} We accepted the State's appeal on two propositions of law:

I. The extent of an applicant for criminal record sealing or expungement's criminal history can provide the sole basis for denying their application(s), as it speaks directly to the issue of "rehabilitation" within the meaning of R.C. 2953.32(D)(1)(c), and its use as such does not constitute an abuse of discretion.

II. R.C. 2953.32(D)(1)(F) does not preclude a trial court's sua sponte consideration of a legitimate governmental interest in maintaining an applicant for criminal record sealing or

expungement's record of conviction, nor does the fact that the state is not the party articulating such interest diminish the weight that the trial court may place upon it.

*See* 2024-Ohio-4501.

## II. ANALYSIS

**{¶ 11}** R.C. 2953.32 provides the procedure by which an offender may apply to have her convictions sealed.[2] The trial court is to hold a hearing before deciding whether to grant the application. R.C. 2953.32(C). At the hearing, the trial court determines whether the applicant is seeking to have eligible convictions sealed and whether the applicant has waited the appropriate period before applying. R.C. 2953.32(D)(1)(a). The court also determines whether the applicant has criminal charges pending. R.C. 2953.32(D)(1)(b). And the statute instructs the court to consider any objection by the State or a victim and any statement submitted by a victim. R.C. 2953.32(D)(1)(d), (e), and (g). The applicant must show her rehabilitation "to the satisfaction of the court," R.C. 2953.32(D)(1)(c), and that her interests in having her convictions sealed outweigh any governmental interest to maintain the records, R.C. 2953.32(D)(1)(f).

**{¶ 12}** As the statute's language makes clear, the decision whether to grant an application to seal is within the discretion of the trial court. "No court is ever required to seal conviction records." *State v. Aguirre*, 2014-Ohio-4603, ¶ 27. Consequently, an appellate court reviews a trial court's grant or denial of an application to seal for an abuse of discretion. *See State v. Hamilton*, 1996-Ohio-440, ¶ 15 (a hearing under R.C. 2953.32(B) "provides the court with the opportunity

---

2. This court has explained the difference between expungement and sealing: "Expungement results in deletion, making all case records 'permanently irretrievable,' while sealing simply provides a shield from the public's gaze." (Citations omitted.) *State v. Aguirre*, 2014-Ohio-4603, ¶ 5, fn. 2. Here, J.B. sought to have her records sealed.

to review matters of record and to make largely subjective determinations regarding whether the applicant is rehabilitated").

{¶ 13} "We have defined an abuse of discretion as conduct that is unreasonable, arbitrary or unconscionable. And an 'arbitrary' decision is one made without 'consideration of or regard for facts or circumstances.'" *State v. Beasley*, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* (10th Ed. 2014). When conducting an abuse-of-discretion review, "an appellate court is not free to substitute its judgment for that of the trial judge." *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990). Here, the First District did substitute its judgment for that of the trial court. And in doing so, it applied criteria not found in R.C. 2953.32.

### A. Nothing in the statute proscribes considering an applicant's number of convictions

{¶ 14} The court of appeals held that when evaluating whether J.B. had been rehabilitated, the trial court improperly considered the number of J.B.'s convictions. The court cited its own precedent, in which it held, "'[A] court cannot deny an application to seal based solely on the nature or number of offenses, if the records of those offenses are eligible for sealing under the law.'" 2024-Ohio-1879 at ¶ 22 (1st Dist.), quoting *State v. G.H.*, 2023-Ohio-3269, ¶ 22 (1st Dist.). The court pointed to the General Assembly's amendment to R.C. 2953.32 in 2022 Am.Sub.S.B. No. 288, which expanded eligibility for sealing by removing the limit on the number of misdemeanor convictions eligible. *Id.* at ¶ 22. In the court of appeals' view, the legislature's action "seemingly indicated its agreement with [the First District's own] conclusion in *G.H.*" *Id.*

{¶ 15} Whether the First District's judicially created rule even applies here is debatable. The trial court did not base its decision regarding J.B.'s rehabilitation *solely* on the number of her convictions. But in any event, nothing in the statute proscribes consideration of the number of an applicant's convictions when balancing the interests of the parties in sealing records. The trial court reasonably

questioned whether a person whose convictions spanned seven years had demonstrated rehabilitation.

### B. *Trial courts may consider the nature of the applicant's convictions*

{¶ 16} The First District again relied on *G.H.* when reviewing the trial court's determination whether J.B.'s interest in sealing her records outweighed the government's interest in their remaining public. *Id.* at ¶ 28. Recall that the trial court noted that J.B.'s convictions involved either dishonesty or offenses against justice and public administration. The trial court concluded that because J.B.'s profession involved a position of trust, the governmental interest in the public's need to know outweighed J.B.'s interest in sealing the records. In the First District's view, this consideration was improper under *G.H.* because the General Assembly had already weighed those interests in delineating which offenses are eligible for sealing. *Id.* But as discussed above, nothing in the statute prohibits a trial court from considering the nature of the convictions when weighing the government's interest. It was not unreasonable to consider what type of convictions J.B. was seeking to seal in light of her professed interest in social work.

### C. *The State's failure to object does not prohibit the trial court from considering the government's interest*

{¶ 17} Related to its dismissal of the trial court's finding regarding the weighing of J.B.'s interest against that of the government, the First District created another rule—"the trial court typically should not place great weight on a governmental interest that the government has not bothered to identify." 2024-Ohio-1879 at ¶ 26 (1st Dist.). Again, this rule is not found in R.C. 2953.32. Indeed, the statute provides otherwise. The statute contains separate provisions that require the consideration of the government's interest, R.C. 2953.32(D)(1)(f), and any objections of the prosecutor, R.C. 2953.32(D)(1)(d). As we have said, the procedures for sealing convictions are not adversarial in nature. *Hamilton*, 1996-Ohio-440, at ¶ 16. The statute places no burden on the State to submit evidence

8

concerning the application. And the lack of objection on the part of the prosecutor does not relieve the trial court of its duty to weigh the governmental interest against the applicant's interest. Here, the trial court's determinations were not unreasonable, given the government's interest in keeping information available to employers and clients about a potential employee's criminal convictions involving dishonesty, particularly when that potential employee might be in a position of trust if hired.

### D. The court of appeals improperly substituted its judgment for that of the trial court

{¶ 18} In addition to applying its own rules rather than those set out in R.C. 2953.32 to analyze the wisdom of sealing J.B.'s records, the First District impermissibly substituted its judgment for that of the trial court. For instance, the court of appeals dismissed the trial court's determination that besides saying, "It's just not me anymore," J.B. offered no evidence of her rehabilitation, 2024-Ohio-1879 at ¶ 26 (1st Dist.). Instead, the court of appeals reinterpreted the evidence. The court pointed to J.B.'s response to the trial court describing her current job as a licensed parenting counselor and her ongoing pursuit of a DSW as further evidence of her rehabilitation. *Id.* But J.B. never suggested that she was offering these statements to show her rehabilitation. That the First District substituted its own judgment for that of the trial court is illustrated by its explanation about why it believed J.B.'s statements reflect her effort to show rehabilitation: "J.B. is going into a field with a strong demonstrated public need. And through her career, she will help people navigate challenging times." *Id.* J.B. raised neither point in her hearing before the trial court. In fact, when asked if she wanted to elaborate on her application for sealing, J.B. replied, "Nope." Even so, the trial court did consider what J.B. stated on the record about her current employment and the profession she was pursuing. And it was for the trial court to determine whether her employment demonstrated rehabilitation to its satisfaction. *See Hamilton* at ¶ 15.

{¶ 19} The First District also gave significant weight to J.B.'s obtaining a CQE. *See* 2024-Ohio-1879 at ¶ 22 (1st Dist.). R.C. 2953.25 delineates the procedure for an applicant to obtain a certificate that "constitutes a rebuttable presumption that the person's criminal convictions are insufficient evidence that the person is unfit for the license, employment opportunity, or certification in question." R.C. 2953.25(D)(2). Unlike applications for sealing, for which granting or denying is subject to the trial court's discretion, a person seeking a CQE "is rebuttably presumed to be eligible for a certificate of qualification for employment," R.C. 2953.25(C), if the court finds she has met certain waiting periods and no clear and convincing contrary evidence is provided, R.C. 2953.25(C)(5) and (6). A finding regarding rehabilitation is not required, so the trial court's decision not to cite J.B.'s CQE as evidence of her rehabilitation was not unreasonable.

{¶ 20} The First District also took issue with how the trial court weighed the government's interest in keeping the records public against J.B.'s interest in sealing them. Notably, the court did not conclude that the trial court had failed to weigh the respective interests. Instead, the court of appeals performed its own weighing and determined that J.B.'s interest was greater because "[s]he is pursuing her DSW and the applicable state licensure to further her career in social work, and her license is jeopardized by the required background check." 2024-Ohio-1879 at ¶ 29 (1st Dist.). Outside of improperly substituting its own judgment for that of the trial court, the court of appeals' determination is dubious. J.B. stated that she was already licensed as a parenting counselor, and she offered no evidence that her license was in jeopardy. And J.B. said that she was not currently seeking new employment. Part of the discussion at her hearing about her reason for seeking sealing was marked on the transcript as "indiscernible." But according to the trial court, J.B. said she did not want to "'explain every single time' her criminal record as she moves forward in her career." The trial court's determination that this

interest was entitled to less weight than the government's interest was not "unreasonable, arbitrary or unconscionable," *Beasley*, 2018-Ohio-16, at ¶ 12.

### III. CONCLUSION

{¶ 21} While nominally applying the abuse-of-discretion standard of review to the trial court's judgment, the First District improperly substituted its judgment for that of the trial court. As discussed above, it was not unreasonable for the trial court to conclude that J.B. had not been rehabilitated to its satisfaction or that the governmental interest in allowing the records of her convictions to remain public outweighed her interest in having the records sealed. And given the trial court's explanation of its decision with reference to the record before it, we conclude that the decision was not arbitrary. Certainly, it was not unconscionable. Therefore, we hold that the trial court did not abuse its discretion when it denied J.B.'s applications to seal her convictions. The portion of the judgment of the First District Court of Appeals addressing the five cases appealed by the Hamilton County prosecuting attorney is reversed, and the judgments of the trial court with respect to those cases are reinstated.

Judgment reversed in part.

_____

**BRUNNER, J., concurring in part and dissenting in part.**

{¶ 22} I agree with the majority opinion that the court of appeals erred in a number of respects. I disagree, however, with the majority opinion's conclusion that the trial court did not abuse its discretion when it denied appellee J.B.'s applications to seal her convictions in five cases. The better disposition would be to remand this matter to the trial court for it to reconsider J.B.'s applications in accordance with the applicable law. I therefore concur in part and dissent in part.

{¶ 23} The term "abuse of discretion" refers to a decision that is "'unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). The

standard "is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 2013-Ohio-966, ¶ 34. An appellate court may not find an abuse of discretion based on the fact that viewing the record de novo, it would have found a particular argument more persuasive. *See AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990) ("It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.").

{¶ 24} On the other hand, the standard does not require an appellate court to provide complete deference to a trial court. "'"The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations."'" *Nakoff v. Fairview Gen. Hosp.*, 1996-Ohio-159, ¶ 13, quoting *State v. Jenkins*, 15 Ohio St.3d 164, 222 (1984), quoting *Spalding v. Spalding*, 355 Mich. 382, 384 (1959). We have therefore recognized that a trial court abuses its discretion when its decision is "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Id.*, citing *Jenkins* at 222.

{¶ 25} Ultimately, the abuse-of-discretion standard focuses on the fundamental soundness of a trial court's decision. We frequently speak of matters being committed not simply to the discretion of the trial court but, rather, to the *sound* discretion of the trial court. *See, e.g., State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus ("The admission or exclusion of relevant evidence rests within the *sound* discretion of the trial court." [Emphasis added.]); *State v. Xie*, 62 Ohio St.3d 521 (1992), paragraph two of the syllabus ("The decision to grant or deny a presentence motion to withdraw a guilty plea is within the *sound* discretion of the trial court." [Emphasis added.]). An abuse of discretion therefore

"includes a situation in which a trial court did not engage in a '*sound* reasoning process.'" (Emphasis added.) *State v. Hickman*, 2024-Ohio-5747, ¶ 32, quoting *AAAA Ents.* at 161.

{¶ 26} To avoid reversal, then, a trial court is not obligated to determine which arguments would be most persuasive to the appellate court. *See AAAA Ents.*, 50 Ohio St.3d at 161. It is, however, obligated to ensure that its decision does not indicate that it may have ignored facts or judged them against an indeterminable standard. Such a decision is "arbitrary" and an abuse of discretion. *See State v. Beasley*, 2018-Ohio-16, ¶ 12 (explaining that a decision is "arbitrary" if it is made without consideration of or regard for facts or circumstances, without an adequate determining principle, or not governed by any fixed rules or standard).

{¶ 27} And finally:

> "No court—not a trial court, not an appellate court, nor even a supreme court—has the authority, within its discretion, to commit an error of law." . . . This should be axiomatic: a court does not have discretion to misapply the law. A court has discretion to settle factual disputes or to manage its docket, for example, but it does not have discretion to apply the law incorrectly. That is why courts apply a de novo standard when reviewing issues of law.

*Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 38, quoting *State v. Boles*, 2010-Ohio-278, ¶ 26 (2d. Dist.).

{¶ 28} In the case of motions to seal criminal records, if the movant meets the criteria for sealing criminal records, the court *must* do so. *See* R.C. 2953.32(D)(2)(a) ("The court . . . shall [subject to several exceptions] order all official records of the case that pertain to the conviction or bail forfeiture sealed . . . .").

**{¶ 29}** The trial court in this case abused its discretion. After holding a hearing on J.B.'s applications to seal her convictions, it concluded that "[n]o evidence of rehabilitation was offered aside from [J.B.'s] general statement, '[T]hat's just not me anymore.'" That conclusion is plainly contradicted by the record. At the hearing, J.B. explained that she was working as a licensed parenting counselor and pursuing advanced credentialing in the field of social work. Specifically, she was completing an internship as part of a program to obtain a doctorate of social work. Additional licensing would require a background check, however, so she sought to have her records sealed to move forward in her profession. Finally, J.B. noted that she had previously obtained a certificate of qualification for employment ("CQE") from the court. *See* R.C. 2953.25 ("Certificate of qualification for employment of persons subject to collateral sanctions").

**{¶ 30}** This evidence is indicative of rehabilitation. The fact that J.B. obtained work as a licensed parenting counselor and the fact that she was pursuing an advanced degree to further her career both support the conclusion that she has moved forward in her life. Her efforts to obtain a CQE further support that conclusion. As the court of appeals explained, "CQEs are a form of postconviction relief designed to assist persons with criminal records in obtaining employment by 'remov[ing] the automatic disqualification from employment or occupational licensure in certain fields.'" (Bracketed text in original.) 2024-Ohio-1879, ¶ 20 (1st Dist.), quoting *In re Sanders*, 2024-Ohio-717, ¶ 8 (1st Dist.). R.C. 2953.25(C)(3) establishes that a CQE may be issued only if the trial court finds by a preponderance of the evidence that the individual has established the following:

(a) Granting the petition will materially assist the individual in obtaining employment or occupational licensing.

(b) The individual has a substantial need for the relief requested in order to live a law-abiding life.

(c) Granting the petition would not pose an unreasonable risk to the safety of the public or any individual.

**{¶ 31}** To be clear, I am not stating that the trial court had an obligation to assign this evidence any particular amount of weight. It was free to view the evidence as significant or not—or something in between. The weight to be given to evidence such as that before the trial court here is a matter squarely within the trial court's discretion. *See AAAA Ents.*, 50 Ohio St.3d at 161 (stating that an abuse of discretion may not be found simply because the appellate court does not find the trial court's "reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result"). Here, however, the trial court's decision does not even acknowledge this evidence of rehabilitation. Instead, the trial court found that "[n]o evidence of rehabilitation was offered aside from [J.B.'s] general statement, '[T]hat's just not me anymore.'" That conclusion belies the record and indicates that the trial court either ignored the evidence discussed above, relied on a novel and unusual definition of "rehabilitation," or judged the evidence against an indeterminable standard. Whatever the cause, the trial court's statement indicates that its decision was "arbitrary" and an abuse of discretion. *See Beasley*, 2018-Ohio-16, at ¶ 12.

**{¶ 32}** Nonetheless, the court of appeals was not authorized to directly order the relief J.B. sought, even though it found error in the trial court's judgment, *see* 2024-Ohio-1879 at ¶ 31 (1st Dist.). The court of appeals indicated that the trial court erred by "point[ing] to the number of [J.B.'s] convictions as evidence of her lack of rehabilitation." *Id.* at ¶ 21. A closer reading of the trial court's decision, however, shows that it focused not simply on the *number* of J.B.'s convictions but on the fact that she continued to be convicted of crimes after committing the

offenses she sought to have sealed. For instance, the trial court observed that since her 2016 conviction for obstructing official business, J.B. had been convicted of leaving the scene of an accident in 2017 and later convicted of theft offenses in 2018 and 2019. That temporal focus could be appropriate. *See* R.C. 2953.32(D)(1)(h)(iii) (providing that a trial court considering whether an applicant is rehabilitated may consider the "cessation or continuation of criminal behavior"). However, it appears that no further offenses occurred thereafter—a matter left unconsidered by the trial court.

{¶ 33} I also note that although the State did not object to J.B.'s applications, that fact is not determinative of the trial court's decision. In addition, I agree with the majority that the court of appeals could not substitute its judgment for that of the trial court in reviewing the competing interests at stake. *See* majority opinion, ¶ 18-20.

{¶ 34} In light of these conclusions, I would reverse the judgment of the First District Court of Appeals and vacate the judgments of the trial court. I would remand the five cases at issue to the trial court for it to reconsider J.B.'s applications to seal her convictions in accordance with the principles of law set forth above. I therefore concur in part and dissent in part.

_____

Connie M. Pillich, Hamilton County Prosecuting Attorney, and John D. Hill, Assistant Prosecuting Attorney, for appellant.

Raymond T. Faller, Hamilton County Public Defender, and Sarah E. Nelson, Assistant Public Defender, for appellee.

Verjine V. Adanalian, urging affirmance for amicus curiae Ohio Justice & Policy Center.

Kessler Defense, L.L.C., and Stephanie Kessler, urging affirmance for amicus curiae Addiction Response Coalition of Hamilton County.

_____