[Cite as *State v. Smith*, 2025-Ohio-2166.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-39 |
| | : | |
| v. | : | Trial Court Case No. CRB2300173 |
| | : | |
| GEORGE J. SMITH SR. | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 20, 2025

. . . . . . . . . . .

MATTHEW J. BARBATO, Attorney for Appellant

RONALD P. KELLER, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1}  George J. Smith, Sr., appeals from a judgment of the Fairborn Municipal Court which denied his application for expungement.  For the following reasons, the judgment of the trial court will be affirmed.

**Facts and Procedural History**

{¶ 2} During the evening of February 8, 2023, Smith argued with his 20-year-old son.  The son recorded the confrontation and called the police.  When officers arrived,

he played the recording and said that Smith was threatening him.

{¶ 3} Smith was charged with domestic violence and menacing, fourth-degree misdemeanor offenses.   On May 4, 2023, Smith pled no contest to an amended charge of disorderly conduct, a minor misdemeanor, and the domestic violence charge was dismissed.   The court ordered him to pay a $50 fine and court costs, both of which were suspended.

{¶ 4} Approximately three months later, in August 2023, Smith filed an application for an order sealing the record of the case.    The application was stricken because he did not pay the filing fee.

{¶ 5} Two months later, Smith filed an application for expungement.   The prosecutor's office did not file an objection.   The trial court conducted a hearing on the application on December 28, 2023.   Smith testified that he had been in law enforcement for 21 years and had served as a public safety officer with Dayton Children's Hospital for one and a half years.   Smith stated that he had been a sworn police officer since late 2001, had a special commission with the Dayton Police Department, and had previously worked for the Clark County Sheriff's Department and Village of South Vienna.   Smith testified that he was the father of seven children and that he had "failed as a father" on the night of his arrest.   He expressed remorse for his behavior.   The victim advocate stated that the victim impact statement indicated that there was no objection to Smith's application.

{¶ 6} The trial court orally denied Smith's application at the hearing.   The next day, Smith filed a motion for reconsideration. He supported his request with three letters of

recommendation, all written in 2015.

{¶ 7} On January 2, 2024, the trial court filed a judgment entry overruling the application; it found that the government's interest in maintaining the record due to Smith's employment in law enforcement and at Dayton Children's Hospital outweighed his interest in having the record expunged. Two days later, the trial court overruled the motion for reconsideration.

{¶ 8} On January 24, 2024, Smith again asked the trial court to reconsider its denial of his application for expungement. He raised the same arguments contained in his prior motion for reconsideration, but he attached five recent letters of recommendation. The court denied the motion, stating that it would not consider new evidence and reminding Smith of his right to appeal its judgment. Smith did not file an appeal.

{¶ 9} On March 27, 2024, Smith filed a second application for expungement and attached the same five recent letters of recommendation. The court held a hearing on this application on June 3, 2024. Smith appeared at the hearing with his son, who spoke on his behalf. Smith indicated that he had lost three jobs due to background checks, and he was then in the process of applying with the U.S. Marshals; he was no longer employed at Dayton Children's.

{¶ 10} Again, the trial court orally denied the application for expungement at the hearing, and it filed its written judgment on June 6, 2024. The court concluded that the government's interest in maintaining the record outweighed Smith's interest in having it expunged.

**Assignment of Error and Analysis**

{¶ 11} Smith appeals from the trial court's June 6, 2024 judgment. His sole assignment of error claims that the trial court abused its discretion in denying his second application to expunge his minor misdemeanor conviction for disorderly conduct. The State did not file a responsive brief.

{¶ 12} Before addressing Smith's assigned error, we will review his exchange with the court at the June 3, 2024 expungement hearing:

THE COURT: So, Mr. Smith, I have reviewed what you've provided me.

So far it's the exact same material you provided me previously.

When I overruled your request on January 2 of '24, you did not appeal that, and so my question for you is: What is new at this time?

THE DEFENDANT: Well, the - - the letters, the –previous ones were from people I'd previously worked for in the court system. The second ones that - - from what I understood, the response that I got back, that you didn't - - you wasn't interested in looking at them, so that's when I resubmitted them.

THE COURT: So maybe I'm not phrasing it as best as I could.

So you had a hearing. You tried to then submit things post the hearing, which I was not going to allow anyway simply because you'd already had a hearing. You had that opportunity to present everything.

THE DEFENDANT: Yes, ma'am.

THE COURT: And so I'm asking - - and when I reviewed what you did provide, many of what you provided were still what I had before for letters.

And - - and, as you know, why I overruled it previously was that I found that the governmental interest in maintaining these records exceeded your own interests in it, and so that's what I'm asking. That's the only thing really that I could see that would change.

And - - and, again, you did not appeal my last decision.

THE DEFENDANT: No. I was working. I – I – we – we were short at work, and I was just working a lot of overtime and stuff, and I didn't have a chance to appeal it.

THE COURT: Okay. So what has changed in that regard?

THE DEFENDANT: Just that, I mean, I - - I've never been in trouble before. Like I - - like I explained, this was a one-time incident where my son and I had a disagreement. I'd like to think that I can pull all seven of my children in here and they would speak on my behalf to the point where its - - I – I— I'm a good father.

Did I make a mistake by talking to my son the way I did that night? Yes. Did I threaten him? No.

And I – I've always lived by the law. I – I mean, I've got almost 24 years of law enforcement, being in the law enforcement.

If I was a trashman, this probably would have been - - would have been expunged.

THE COURT: There would be a different weighing of the evidence, the weighing, yes.

**{¶ 13}** After further discussion and Smith's son's statements on Smith's behalf, the court specifically noted that there "was audio that the officer listened to that day as far as what occurred in making the decision to charge." The discussion then continued:

THE COURT:   . . . So, Mr. Smith, I still have the same analysis I did before, and you - - you didn't appeal that.   And other than bringing in the victim today, it seems to be the exact same issue I decided from before, and you're trying to get another bite at the apple, more or less.

So I'm still overruling it, still finding that the State's interest in maintaining this record exceeds your own personal interest.

. . .

THE DEFENDANT:   One question.   With me - - with me – with you making the statement that it was because I'm a law enforcement officer, is that not discriminatory?

THE COURT:   Can't give you legal advice.

**{¶ 14}** In our view, this exchange reflects that the municipal court applied the doctrine of res judicata in rejecting Smith's second request to seal the record, a conclusion with which the dissenting opinion disagrees.   We will begin by addressing the application of res judicata.

**{¶ 15}** By way of background, pursuant to R.C. 2953.32(B)(1)(b)(ii), Smith was eligible to file an application for expungement six months after his final discharge for his minor misdemeanor offense.   Upon his filing of such an application, the court was required to set a date for a hearing and notify the prosecutor; the prosecutor may oppose

the granting of the application by filing written objections.   R.C. 2953.32(C).

{¶ 16} "Pursuant to the doctrine of res judicata, a valid final judgment on the merits bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action."  *State v. Reed*, 2015-Ohio-3051, ¶ 26 (2d Dist.), quoting *State v. Collins*, 2013-Ohio-3645, ¶ 9 (2d Dist.).  "In short, the doctrine of res judicata prevents us from considering arguments that could and should have been raised during earlier appeals."  *Thiery v. Thiery*, 2024-Ohio-2936, ¶ 20 (2d Dist.), citing *Chepp v. Chepp*, 2011-Ohio-4451, ¶ 15 (2d Dist.).  "Res judicata does not bar an R.C. 2953.32 application where there is a showing of changed or new circumstances."   *State v. Rojas*, 2008-Ohio-6339, ¶ 12 (2d Dist.), citing *State v. Cope*, 111 Ohio App.3d 309 (1st Dist. 1996).

{¶ 17}  Cases from this and other districts have held that the State may forfeit its right to argue res judicata on appeal in the absence of objection.  *Id.*  ("Furthermore, not having so objected in the trial court proceeding, the state has forfeited its right to argue res judicata on appeal.")  *See also State v. Hair*, 2020-Ohio-3128, ¶ 9 (2d Dist.); *State v. Ofori*, 2023-Ohio-1460, ¶ 11 (1st Dist.); *State v. Delgado*, 2015-Ohio-5256, ¶ 15 (8th Dist.).   These cases, however, do not provide a rationale as to why the State's failure to raise res judicata waives the defense and, given the nature of an expungement proceeding, our consideration of the issue leads us to a contrary conclusion.

{¶ 18} An application for expungement is a civil proceeding and, as such, the Rules of Civil Procedure apply unless a particular rule is clearly inapposite.  *State v. LaSalle*, 2002-Ohio-4009, ¶ 19 (an application under "R.C. 2953.32 is a postconviction remedy

that is civil in nature," citing *State v. Bissantz*, 30 Ohio St.3d 120, 121 (1987); *State v. Hutchen*, 2010-Ohio-6103, ¶ 6 (2d Dist.) (Civ.R. 58(B) applies to an expungement application). *See also State v. Wilkins*, 127 Ohio App.3d 306, 310 (2d Dist. 1998) (a petition for postconviction release, which is also a postconviction remedy, is governed by the Rules of Civil Procedure "unless by [its] nature [a particular rule] would be clearly inapplicable," citing Ohio Civ.R. 1(C)). This, then, implicates Civ.R. 8(C), which addresses affirmative defenses and states, in relevant part, that "*[i]n pleading to a preceding pleading*, a party shall set forth affirmatively . . . res judicata . . . ." (Emphasis added.) Given this dictate, the affirmative defense of res judicata is waived "if not raised in the pleadings or an amendment to the pleadings." *Jim's Steak House, Inc. v. City of Cleveland*, 81 Ohio St.3d 18, 20, (1998), citing Civ.R. 8; Civ.R. 15. Thus, assuming Civ.R. 8(C) applies to an expungement application, it logically follows that the State's failure to assert res judicata waived the defense, making it error for a trial court to deny an expungement application based upon res judicata or for an appellate court to decide an appeal on this basis.

{¶ 19} An expungement proceeding, however, is not adversarial in nature, making Civ.R. 8 – in particular Civ.R. 8(C) – inapplicable. In *State v. Hamilton,* 75 Ohio St.3d 636 (1996), the issue was whether the State's failure to file a written objection under R.C. 2953.32(B), now R.C. 2953.32(C), prevented the State from participating at the expungement hearing to assert an objection to the requested expungement. The court held that the statute did not require the filing of a written objection as a prerequisite to a prosecutor's participation in the expungement hearing. *Id.* at 638. *Hamilton* stated:

It is apparent from a study of R.C. 2953.32 that the essential purpose of an expungement hearing is to provide [the court] with all relevant information bearing on the applicant's eligibility for expungement. Advocacy is subordinated to information gathering. As stated, expungement hearings are not structured on the adversar[ial] model.

*Id.* at 640.

{¶ 20} The Civil Rules, including Civ.R. 8, are structured to regulate adversarial proceedings. A pleading under Civ.R. 8(A) "sets forth a claim for relief . . . ." In contrast, an expungement application is not a claim against an opposing party, but, instead, a request for an "act of grace created by the state." *Hamilton* at 639. Thus, an application for expungement is not a pleading, and, given this, the State's opportunity to assert an objection, either in writing or at the expungement hearing, is not a "pleading [in response] to a preceding pleading . . . ." Civ.R. 8(C). Accordingly, the State's failure to assert res judicata did not act to waive application of the defense.

{¶ 21} Further, there is case law from this and other districts concluding that, as a matter of law, a successive application for expungement is barred by res judicata unless the applicant can establish a change in circumstances. In *State v. Young*, 1992 WL 4465 (2d Dist. Jan. 14, 1992), an initial expungement application was denied, and no appeal was filed. Then, on April 8, 1991, a second application was filed. On April 11, 1991, the trial court denied the second application, finding that Young was precluded from filing a successive application in an attempt to relitigate the expungement issue. Given the three-day period between the filing of the application and its denial, it appears that the

State did not raise res judicata as a defense to the application. On appeal, this court agreed with the trial court, stating that "[Y]oung is not entitled to relitigate the issue by filing a second application." *Young* at *1.

**{¶ 22}** In addition, in *State v. Bailey*, 2015-Ohio-3791, ¶ 16 (2d Dist.), citing *Young*, this court "concluded that successive applications to seal a criminal record are prohibited by res judicata." In *State v. Haney*, 1999 WL 1054840, *4 (10th Dist. Nov. 23, 1999), the Tenth District reached the same conclusion, stating that since Haney could not demonstrate any change in his circumstances, the trial court "was required, as a matter of law, to find the second application barred by res judicata." Finally, in *In re Brown*, 2008-Ohio-4105, ¶ 11 (10th Dist.), the court found that, absent a change in Brown's circumstances, the "trial court was required, as a matter of law, to find [Brown's successive] application [was] barred" by res judicata.

**{¶ 23}** Our analysis confirms that a court may determine the applicability of res judicata in the absence of an objection by the State, and that the court appropriately did so herein. As the trial court indicated, Smith could have raised his arguments in a direct appeal after his first application was denied but did not do so. Also, while it is true that res judicata does not bar a successive application to seal the record in the event of changed circumstances, the record reflects that Smith presented no evidence of a change in circumstances. Much like the defendant in *Young*, Smith presented no new evidence; he simply reiterated his prior arguments. Thus, Smith's application for expungement was barred by res judicata.

**{¶ 24}** Even if we were to conclude that Smith's application was not barred, it would

have failed on the merits. We review a trial court's decision to grant or deny an application to seal records for an abuse of discretion. *State v. Meyers*, 2016-Ohio-4893, ¶ 13 (2d Dist.), citing *State v. Capone*, 2004-Ohio-4679, ¶ 7 (2d Dist.). "An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Id.,* citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). Significantly, an abuse of discretion is not demonstrated by the possibility that another judge would have reached a different result, and the fact that a reviewing court might have exercised its discretion differently or arrived at a different outcome " 'is immaterial' " to evaluating whether the trial court committed an abuse of discretion. *State v. Harrison*, 2028-Ohio-1724, ¶ 16 (2d Dist.), quoting *State v. Webb*, 2012-Ohio-2962, ¶ 14 (2d Dist.).

{¶ 25} At a hearing on an application for expungement, the court must determine whether the applicant has been rehabilitated to the court's satisfaction and weigh "the interests of the applicant in having the records pertaining to the applicant's conviction . . . sealed or expunged against the legitimate needs, if any, of the government to maintain those records." R.C. 2953.32(D)(1)(c) and (f). Significantly, Smith was initially charged with domestic violence and menacing. Support for the municipal court's rejection of the application was found in the fact that Smith specifically denied that he had threatened his son prior to his arrest, thereby casting doubt on his alleged rehabilitation, particularly in light of the narrative supplement to the incident report, which stated that Smith had repeatedly threatened his son as reflected in the son's audio recording of the event. The trial court had the benefit of this information. The supplement stated, "Due to [the

relationship between Smith and his son], [Smith's] threatening [his son] by threat of force and it being apparent that [Smith's son] believed [Smith] would cause imminent physical harm to him, [Smith] was subject to arrest." Smith could be heard in the audio telling his son, "I want to punch you in your fat ass face," telling someone else present that he intended to beat up his son, and stating that if his son were there in the morning, Smith "was going to drop a fist on his f…… face." Given the description of his conduct, it is concerning that Smith, a former police officer, did not perceive the conduct that resulted in his arrest and conviction as threatening and that he continued to minimize his behavior. Smith's comment that the outcome of the hearing would have been otherwise if he were a "trashman" further suggested a lack of understanding of the significance of the incident in general.

{¶ 26} Finally, it is commonly understood that police officers' duties include maintaining order and resolving conflicts in varied situations, often requiring patience, tolerance, and kindness. The record reflects that Smith exhibited none of these traits in the incident with his son despite his nearly 24 years of law enforcement experience, which he emphasized to the court. The municipal court's determination that Smith's interest in having his record sealed was outweighed by the legitimate needs of the government in maintaining them was not unreasonable, arbitrary, or unconscionable given Smith's threatening conduct and the unique nature of law enforcement employment. We cannot say, on the record before us, that the trial court abused its discretion in denying the application. Because we find no abuse of discretion, Smith's assignment of error is overruled.

**{¶ 27}** The judgment of the municipal court will be affirmed.

. . . . . . . . . . . . .

TUCKER, J., concurs.

EPLEY, P.J., dissents.

**{¶ 28}** I would conclude that res judicata did not bar Smith's application for expungement and, further, that the trial court abused its discretion in denying his application. Accordingly, I respectfully dissent.

### I. Res Judicata

**{¶ 29}** "Pursuant to the doctrine of res judicata, a valid final judgment on the merits bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Reed*, 2015-Ohio-3051, ¶ 26 (2d Dist.), quoting *Collins*, 2013-Ohio-3645, ¶ 9 (2d Dist.). "In short, the doctrine of res judicata prevents us from considering arguments that could and should have been raised during earlier appeals." *Thiery*, 2024-Ohio-2936, ¶ 20 (2d Dist.), citing *Chepp*, 2011-Ohio-4451, ¶ 15 (2d Dist.).

**{¶ 30}** Ordinarily, successive applications to seal a criminal record are prohibited by res judicata. *Bailey*, 2015-Ohio-3791, ¶ 16. However, res judicata does not preclude every successive application for expungement. Most notably, res judicata does not bar successive applications where there is a showing of changed or new circumstances. *Hair*, 2020-Ohio-3128, ¶ 10 (2d Dist.).

**{¶ 31}** As noted by the majority opinion, an expungement proceeding does not progress as a typical civil case would. However, upon the filing of Smith's application,

the court was required to set a date for a hearing and notify the prosecutor. R.C. 2953.32(C). The prosecutor may object to the granting of the application by filing written objections with the court. *Id.* The prosecutor thus had opportunities to raise res judicata in writing and orally at the hearing. The trial court also could have, and did, consider whether res judicata barred the application.

{¶ 32} We and other Ohio appellate districts have held that res judicata does not bar review of a trial court's ruling on a successive application for expungement where res judicata was neither raised by the State nor applied in the trial court. *E.g., Hair* at ¶ 9 ("[N]ot having so objected in the trial court proceeding regarding Hair's successive application to seal the record, the State has forfeited its right to argue res judicata on appeal."), citing *Rojas*, 2008-Ohio-6339, ¶ 12 (2d Dist.); *Ofori*, 2023-Ohio-1460, ¶ 11 (1st Dist.);. *Delgado*, 2015-Ohio-5256, ¶ 15 (8th Dist.). I see no reason to abandon our long-standing precedent.

{¶ 33} In this case, the State did not object to either of Smith's applications for expungement, and it did not assert that the second application was barred by res judicata. The State elected not to file an appellate brief, and even if it had, its failure to raise res judicata in the trial court forfeited any right to argue res judicata in this appeal. The trial court expressed concern that Smith's second application was an attempt to circumvent his failure to appeal the denial of his first application for expungement. However, the court addressed the merits of Smith's second application, and it did not reject the application on res judicata grounds. Accordingly, I would conclude that res judicata does not bar us from reviewing the merits of Smith's arguments.

## II. Trial Court's Denial of Expungement

{¶ 34} Turning to the trial court's denial of Smith's application for expungement on the merits, I recognized that the sealing or expungement of a criminal record is an "act of grace created by the state." *State v. Pariag*, 2013-Ohio-4010, ¶ 12, quoting *Hamilton*, 75 Ohio St.3d 636, 639.   However, the remedial expungement provisions of R.C. 2953.32 "must be liberally construed to promote their purposes."   *State ex rel. Gains v. Rossi*, 86 Ohio St.3d 620, 622 (1999), citing R.C. 1.11 and *Barker v. State*, 62 Ohio St.2d 35, 42 (1980).

{¶ 35} At the hearing on Smith's application, the trial court was required to:

(a) Determine whether the applicant is pursuing sealing or expunging a conviction of an offense that is prohibited under division (A) of this section . . . and determine whether the application was made [at an appropriate time];

(b) Determine whether criminal proceedings are pending against the applicant;

(c) Determine whether the applicant has been rehabilitated to the satisfaction of the court;

(d) If the prosecutor has filed an objection in accordance with division (C) of this section, consider the reasons against granting the application specified by the prosecutor in the objection;

(e) If the victim objected, pursuant to the Ohio Constitution, consider the reasons against granting the application specified by the victim in the

objection;

(f) Weigh the interests of the applicant in having the records pertaining to the applicant's conviction or bail forfeiture sealed or expunged against the legitimate needs, if any, of the government to maintain those records;

(g) Consider the oral or written statement of any victim, victim's representative, and victim's attorney, if applicable;

(h) If the applicant was an eligible offender of the type described in division (A)(3) of section 2953.36 of the Revised Code as it existed prior to the effective date of this amendment, determine whether the offender has been rehabilitated to a satisfactory degree.

R.C. 2953.32(D)(1).

{¶ 36} The trial court cannot deny an application to seal or expunge records based solely upon the nature of the offense. *See, e.g., State v. A.L.H.*, 2023-Ohio-4789, ¶ 30 (8th Dist.); *State v. G.H.*, 2023-Ohio-3269, ¶ 22 (1st Dist.); *State v. Gaines*, 2021-Ohio-1439, ¶ 21 (6th Dist.). "The legislature has already made that determination in setting forth which offenses are eligible to be sealed and which are not." *G.H.* at ¶ 22. However, consideration of the circumstances surrounding an offense may support substantial police and public interest in maintaining the records. *Gaines* at ¶ 21, citing *State v. Reiner*, 2016-Ohio-5520, ¶ 15-16 (8th Dist.).

{¶ 37} This court has recognized that the government's interest may be premised upon protection of the public's interest and preserving the public's opportunity to be informed about criminal matters regarding people who may become employed in a

position of trust. *See State v. Hamilton*, 1994 WL 721946 (2d Dist. Dec. 14, 1994), *aff'd*, 75 Ohio St.3d 636 (1996) (where an applicant might attempt to practice law or accounting in the future, the court did not abuse its discretion in finding the government's interest in maintaining the record of his theft conviction outweighed his interest in having those records sealed). *But see, e.g., State v. A.S.*, 2022-Ohio-3833 (1st Dist.) (reversing the denial of an application to seal a misdemeanor theft conviction for a person seeking employment in the healthcare field where the interest was based on "employers having access to records such as this").

**{¶ 38}** On the other hand, we have held that a court's "blanket refusal" to consider an option before it is a refusal to exercise discretion. *In re Transfer of Structured Settlement of Anderson*, 2020-Ohio-5408, ¶ 10 (2d Dist.). "Where discretion is called for, we have consistently concluded that adherence to a blanket policy is an abuse of discretion." *Id.*

**{¶ 39}** In this case, the trial court concluded that Smith's application for expungement failed because the government's need to maintain the record of his conviction outweighed his interest in having the record expunged. The court made clear that Smith's employment as a law enforcement officer was the determining factor in its decision.

**{¶ 40}** Although the trial court stated that it considers cases on a case-by-case basis, the trial court's comments to Smith nevertheless expressed a blanket policy of denying applications for expungement where the applicant works in law enforcement. It indicated that, where law enforcement personnel were concerned, convictions should be

reflected in the background check performed during the hiring process. There was no indication that the trial court considered Smith's specific circumstances and interests in having the records expunged.

{¶ 41} Here, Smith had been convicted of a minor misdemeanor stemming from a confrontation at home with his 20-year-old son. The record does not reveal any other criminal history. The State neither opposed Smith's application nor advanced any governmental interest in maintaining the record of his conviction. "[T]he trial court typically should not place great weight on a governmental interest that the government has not bothered to identify." *State v. J.B.*, 2024-Ohio-1879, ¶ 26 (1st Dist.). Smith's son (the victim) testified on Smith's behalf at the expungement hearing. Smith had been a law enforcement officer for more than 20 years, and he provided letters attesting to his professionalism and good character. Smith testified that his conviction had prevented him from obtaining several job opportunities in law enforcement. While I recognize the public's interest in ensuring the integrity of its police officers, under the particular facts of this case, I would conclude that the trial court abused its discretion in denying Smith's application for expungement.

{¶ 42} Moreover, the sole concern raised by the trial court – that law enforcement agencies have a complete picture to evaluate any application for employment – is addressed by R.C. 2953.32(5). That statute requires BCI to maintain a record of expunged convictions for the limited purpose of determining a person's qualification for employment in law enforcement. Because expungement of Smith's minor misdemeanor conviction would not affect access to that record of conviction for the limited purposes of

assessing his qualifications for law enforcement employment, I would conclude that the trial court's denial of Smith's application for that reason alone constituted an abuse of discretion.