[Cite as *State v. Gunnels*, 2025-Ohio-5757.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

    v.                                      :

CORNELIUS GUNNELS,                 :

    Defendant-Appellant.      :

No. 114896

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 24, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-693574-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Elle M. English, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Rick Ferrara, Assistant Public Defender, *for appellant.*

LISA B. FORBES, P.J.:

{¶ 1} Appellant Cornelius Gunnells ("Gunnels") appeals from an order of the trial court revoking his community control and imposing a six-month prison term. For the reasons that follow, we affirm the trial court's decision.

## I.    FACTS AND PROCEDURAL HISTORY

{¶ 2}    On September 23, 2024, Gunnels pleaded guilty to violating a protection order, a fifth-degree felony, in violation of R.C. 2919.27(A)(1).  The court sentenced Gunnels to one year of community-control supervision for the violation, with up to two-years of postrelease-control supervision at the discretion of the parole board should Gunnels violate his community control and be sent to prison for the violation.  As a condition of his community control, Gunnels was ordered by the court to have no contact with the victim.

{¶ 3}    On February 3, 2025, the court held a hearing on an allegation that Gunnels had violated his community control.  At the hearing, Gunnel's probation officer testified that he had been contacted by the victim and was informed that Gunnels had been living with the victim and wanted her to write a letter to his probation officer asking that the no-contact order between him and her be lifted.  According to Gunnel's probation officer, the victim had informed the probation officer that she did not want the no-contact order lifted but that Gunnels was pressuring her to request such relief on his behalf.  At the hearing, Gunnels denied the allegations that he had been living with the victim and encouraging her to request that the no-contact order be lifted.  In light of Gunnels's denial, the trial court continued the hearing to the following week so that the victim could be subpoenaed to court to testify.

{¶ 4}    On February 10, 2025, the community-control violation hearing recommenced with the victim present.  There, the victim testified under oath that

Gunnels had been living with her, on and off, between September 2024 and January 2025, during the time he was on community-control supervision and subject to a no-contact order.

{¶ 5} At the close of the hearing, the trial court found that Gunnels had violated the terms of his community control by living with the victim, revoked community control, and imposed a six-month prison term to be followed by up to a two-year period of postrelease control.

{¶ 6} Gunnel's now appeals from that order by raising the following two assignments of error:

> 1. The trial court abused its discretion and acted contrary to law in failing to allow the defendant to raise a defense or allocute at his probation violation hearing.
>
> 2. The trial court acted contrary to law by unlawfully sentencing defendant to prison for a technical violation of community control sanctions.

## II. LAW AND ANALYSIS

### A. First Assignment of Error: Right to Defend and Allocute

{¶ 7} In his first assignment of error, Gunnels asserts that the trial court abused its discretion, acted contrary to law, and violated his right to due process by preventing his counsel from challenging the victim's testimony at the revocation hearing and by limiting his right to allocution at sentencing.

{¶ 8} Revocation of community control entails a significant loss of liberty. *See State v. Patton*, 2016-Ohio-4867, ¶ 8 (8th Dist.) Accordingly, an individual under community-control supervision is entitled to certain due-process protections

whenever there is an allegation of a violation that could result in the revocation of their community control. *See State v. Greene*, 2018-Ohio-1965, ¶ 16 (8th Dist.), citing *State v. Bailey*, 2016-Ohio-494, ¶ 9 (8th Dist.), citing *Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973); *see also State v. Solomon*, 2019-Ohio-1841, ¶ 9 (11th Dist.), quoting *State v. Dockery*, 2010-Ohio-2365, ¶ 10 (1st Dist.) ("'Community-control-revocation proceedings require a minimal threshold of due process . . . .'"). These due-process requirements include:

> "(1) written notice of the claimed violations; (2) disclosure of evidence against [the defendant]; (3) [an] opportunity to be heard and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a 'neutral and detached' hearing body; and (6) a written statement by the factfinder of the evidence relied upon and reasons for revocation."

*State v. Davis*, 2010-Ohio-5126, ¶ 26 (8th Dist.), quoting *State v. Miller*, 42 Ohio St.2d 102, 104 (1975).

{¶ 9} A community-control revocation hearing is not a criminal trial, however; therefore, the State is not required to establish a violation of the terms of community control beyond a reasonable doubt. *See State v. Reese*, 2020-Ohio-4747, ¶ 21 (8th Dist.). Instead, substantial evidence of a community-control violation is enough to establish the violation and revoke community control. *See State v. Cox*, 2018-Ohio-748, ¶ 16 (8th Dist.). "'Substantial evidence has been defined as being more than a scintilla of evidence, but less than a preponderance.'" *State v. Davis*, 2017-Ohio-8873, ¶ 14 (8th Dist.), quoting *State v. McCants*, 2013-Ohio-2646, ¶ 11 (1st Dist.); *see also Consol. Edison Co. v. Natl. Labor Relations Bd.*,

305 U.S. 197, 229 (1938) ("Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992), quoting R.C. 119.12 ("'Substantial' evidence is evidence with some weight; it must have importance and value.").

{¶ 10} Appellate courts review a trial court's determination to revoke community control for an abuse of discretion. *See State v. Williams*, 2025-Ohio-461, ¶ 9 (8th Dist.). "An abuse of discretion 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). A court commits an abuse of discretion by "exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 11} In addition to the due-process rights outlined above, the trial court "must afford an offender an opportunity for allocution at a community-control-revocation hearing before imposing a sentence for violating the conditions of community control." *State v. Jackson*, 2016-Ohio-8127, ¶ 1. When an offender is not afforded the opportunity to allocute at sentencing on a community-control violation, resentencing is required unless the error was invited or harmless. *Id.* at ¶ 15.

{¶ 12} At the probation-violation hearing held on February 3, 2025, and continued to February 10, 2025, the State alleged that Gunnels violated the no-

contact order by communicating with the victim via text messages and by residing with her intermittently at her home. When questioned by the court, the victim testified that Gunnels lived with her at various times between September 2024 and January 2025. She stated that on multiple occasions he contacted her after work to request a ride and she would bring him to her residence, where he would spend the night. The victim further testified that although Gunnels sometimes stayed at his mother's home when they were arguing, he otherwise resided with her. She also indicated that he kept personal belongings, such as Christmas gifts, at her home during this period.

{¶ 13} Defense counsel was then given the opportunity to cross-examine the victim. Before beginning, counsel placed on the record that Gunnels denied contacting the victim by text or residing with her during the period covered by the no-contact order. Counsel asserted that the phone number the victim claimed to have texted belonged not to Gunnels, but to his girlfriend. He also stated that Gunnels had blocked the victim's number and had been actively trying to avoid her.

{¶ 14} In light of these representations, the trial court clarified it was concerned solely with the allegation that Gunnels resided with the victim in violation of the no-contact order. The court stated that any alleged text messages between the parties would not be considered in determining whether a community-control violation occurred. The court, therefore, explained that it would not require proof regarding whether Gunnels himself sent the messages or whether they originated

from someone else, such as his girlfriend.  Specifically, the following exchange took place on the record:

> THE COURT:  [Defense counsel], did you have some inquiry?
>
> DEFENSE COUNSEL:  I do, Your Honor.
>
> THE COURT:  What are the issues?
>
> DEFENSE COUNSEL:  The issue is as far as one, this communication and texts that she has, what's the phone number — that she actually knows the defendant's phone number.
>
> THE COURT:  [Defense counsel], do you understand that if the Court finds that your client was in contact with the victim, meaning simply residing from time to time at her home after being placed on probation, then he's in violation of the conditions of probation?
>
> So I guess what I would say to you is I could just exclude all the text messages, exclude all the e-mails, if that would give you peace of mind. I don't want you to feel like your client might be being held responsible for a text message that maybe wasn't sent by him, might have been sent by someone else who had access to his phone.
>
> Rather than get into a great back and forth about that, we can just exclude all of that. I won't make that part of the violation.
>
> The question is was he, from time to time, residing with her or going to her home?
>
> DEFENSE COUNSEL:  The question I guess that I posed, Your Honor, and the reason why I stated that is because there has been some communication that — well, I'm asking if she's had with him, that she thought with him but was actually somebody else.
>
> In fact, there has been some information that she has been trying to contact him since this case started. He has never contacted her, wanted to contact her, let alone live with her.
>
> THE COURT:  So —
>
> DEFENSE COUSEL:  So this is something initiated from her since the beginning of the outset of this case, and continues to this point.  She has not received any reciprocation, so now we're here.

THE COURT: Look, if you have questions that go to the issue of whether or not your client has at any point resided in her home, visited her home, I'll let you inquire.

DEFENSE COUNSEL: Okay.

{¶ 15} Thereafter, during cross-examination, when defense counsel asked about the victim's contacts with Gunnels between July and August 2024, before the no-contact order was issued, and further inquired about certain text messages the victim had sent or received, the trial court halted the questioning. The court redirected defense counsel to the sole issue before it: whether Gunnels had resided or been to the victim's home during the period in which the no-contact order was in effect, from September 2024 through January 2025. Specifically, the following exchange took place:

THE COURT: [Defense counsel], the question here really is a limited one, is whether or not your client has been having — I'm only concerned with the physical contact with the victim, particularly at her home. Has he been at her home since September.

DEFENSE COUNSEL: Okay.

THE COURT: Now, I appreciate what you're saying. You're saying this woman is not familiar with the truth, and she might just make up anything. So you want to tell me prior instances of dishonesty on her part to suggest that all the rest of this is untrue. I get it. I understand.

My question is do you have any questions that have to do with the time since he's on probation specifically.

DEFENSE COUNSEL: [directing his question to the victim] Do you have anything with you, as far as pictures or any kind of information, that he was at your house?

THE VICTIM: The prosecutor has the text messages. I didn't take pictures of his clothing that's still at my house, because I didn't think I needed that.

{¶ 16} Gunnels argues that limiting defense counsel's cross-examination to the narrow question of whether he had resided with the victim during the period covered by the no-contact order — and the court's refusal to allow questioning or introduce evidence regarding the allegedly sent text messages — constituted an abuse of discretion and violated his right to due process. He maintains that cross-examination about the text messages would have cast doubt on the truthfulness of the victim's statements regarding whether he had lived with her. We are not persuaded.

{¶ 17} Although cross-examination is generally permitted on all relevant matters and on issues affecting credibility, the trial court retains broad discretion to impose reasonable limits on cross-examination based on "concerns of harassment, prejudice, confusion of the issues, witness safety or interrogation that is repetitive or only marginally relevant." *State v. Canada*, 2015-Ohio-2167, ¶ 55 (10th Dist.). Here, at the outset of the hearing, the trial court informed the parties that it would first conduct a brief examination of the victim and would then permit both defense counsel and the State to conduct only a brief inquiry — not full direct or cross-examinations. The court explained that it did not want the victim to feel as though she were under attack. The court also made clear that it would base its revocation determination not on any communications that may have occurred via text message, but solely on the allegation that Gunnels had been to the victim's home.

{¶ 18} We find no error in the trial court's decision to limit cross-examination to the single salient issue dispositive of revocation: whether Gunnels

had physical contact with the victim at her home. Although Gunnels asserts that further cross-examination regarding the alleged text messages would have undermined the victim's credibility, the transcript reflects that the trial court understood this argument but, in its discretion, concluded that the text messages were only marginally relevant to assessing the victim's testimony on the living-arrangement issue. Under these circumstances, the trial court neither abused its discretion nor violated Gunnels's due-process rights by limiting the scope of cross-examination.

{¶ 19} Additionally, Gunnels contends that the trial court abused its discretion and acted contrary to law by failing to provide him an opportunity to allocute at the sentencing for his community-control violation. We disagree. The sentencing transcript demonstrates that the court addressed Gunnels directly and afforded him the opportunity to speak. Gunnels used this opportunity to inform the court that he had not contacted the victim while on community control. That the court did not accept these statements as credible and nonetheless imposed a six-month prison term, does not establish that he was denied his right of allocution.

{¶ 20} Accordingly, we overrule Gunnels's first assignment of error.

## B. Second Assignment of Error: Technical Violation

{¶ 21} In his second assignment of error, Gunnels contends that the trial court's restriction on his ability to cross-examine the victim prevented him from establishing that his community-control violation was merely a "technical violation." According to Gunnels, had the violation been classified as technical, the

court could not have imposed a six-month prison term, because R.C. 2929.15(B)(1)(c) and (B)(2)(c)(i) limit the sanction for a technical violation of community control on a fifth-degree felony to a maximum of 90 days in jail. We find no merit to Gunnels's argument because Gunnels's violation was not technical in nature.

{¶ 22} R.C. 2929.15 defines technical violation of community control, as follows:

(E) As used in this section, "technical violation" means a violation of the conditions of a community control sanction imposed for a felony of the fifth degree, or for a felony of the fourth degree that is not an offense of violence and is not a sexually oriented offense, and to which neither of the following applies:

(1) The violation consists of a new criminal offense that is a felony or that is a misdemeanor other than a minor misdemeanor, and the violation is committed while under the community control sanction.

(2) The violation consists of or includes the offender's articulated or demonstrated refusal to participate in the community control sanction imposed on the offender or any of its conditions, and the refusal demonstrates to the court that the offender has abandoned the objects of the community control sanction or condition.

{¶ 23} The Ohio Supreme Court has held that

"a violation is 'nontechnical' if, considering the totality of the circumstances, the violation concerns a condition of community control that was 'specifically tailored to address' matters related to the defendant's misconduct or it can be deemed a 'substantive rehabilitative requirement which addressed a significant factor contributing to' the defendant's misconduct."

*State v. Nelson*, 2020-Ohio-3690, ¶ 26, quoting *State v. Davis*, 2018-Ohio-2672, ¶ 17, 18 (12th Dist.)

{¶ 24} Under a totality-of-the-circumstances review, there is no plausible way to characterize Gunnels's violation of community control as merely a "technical violation." His violation was predicated on the fact that he lived with the victim while under a no-contact order — an order specifically imposed as a condition of his community control and tailored to address his prior criminal conduct.

{¶ 25} Gunnels was originally placed on community control after being convicted of violating an anti-stalking protection order issued in a separate case involving the same victim. The no-contact condition was an integral component of the court's decision to impose community control instead of a prison term. At the sentencing hearing, the trial court explicitly stated that its primary concern in granting community control was whether Gunnels could control himself and stay away from the victim. Specifically, the court stated:

> [W]hat I really want to convey to you is that, as a judge, when I see charges like these, it makes me uncomfortable. I worry that this is a person who maybe doesn't have boundaries, doesn't have self control, can't keep himself from acting, can't stop himself when he has an inclination. And so it makes me nervous, but I'm not going to send you to prison. You have done a year and — and this conduct, as I understand it, is — is over a year old.

The trial court then when on to explain that other than monthly telephonically reporting to his probation officer, the only condition of community control that he would be imposing on Gunnels was that Gunnels have no contact with the victim. The court stated:

> So for the year that you are on probation, there will be a no-contact order. As long as you don't violate that no-contact order, there won't be any additional consequences . . . . But for now, the only condition of

your probation will be that you not have any contact with this victim for one year. If you successfully are able to do that, then the probation will be terminated. If you successfully are able to do that, then the probation will be terminated. Do you understand?

In response, Gunnels stated, "[Y]es, sir," indicating that he did understand. Then the trial court continued with "If you do contact her, and even if it is in response to her contacting you, I'm going to send you to prison. Do you understand that?" In response, Gunnels again stated, "[Y]es, sir."

{¶ 26} Considering the totality of the circumstances, we conclude that Gunnels's conduct, which consisted of living with the victim while subject to a no-contact order, did not constitute a mere technical violation of his community control. Therefore, even if the court had permitted broader cross-examination of the victim during the violation hearing, Gunnels could not have established that his violation was purely technical. As a result, the trial court was not limited to imposing only a 90-day jail term for the violation.

## III. CONCLUSION

{¶ 27} For the foregoing reasons, we overrule appellant's assignments of error and affirm the trial court's judgment finding appellant guilty of a community-control violation and imposing a six-month prison term as a sanction for the violation.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR