[Cite as *In re K.G.*, 2026-Ohio-2092.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| IN RE K.G. | : | |
| | | No. 115833 |
| A Minor Child | : | |
| | | |
| [Appeal by Mother, T.R.] | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** June 4, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-23-902041

---

### *Appearances:*

David S. Bartos, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony R. Beery, Assistant Prosecuting Attorney, *for appellee* CCDCFS.

MICHAEL JOHN RYAN, J.:

{¶ 1} Mother-appellant T.R. ("Mother") appeals from the juvenile court's October 27, 2025 judgment granting the motion of plaintiff-appellee the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the Agency") to

modify temporary custody to permanent custody.[1] This appeal relates to one of Mother's children, K.G., who was seven years old at the time of trial, which was held on October 21, 2025.

{¶ 2} For the reasons set forth below, we reverse the judgment of the trial court and remand the case to the juvenile court for further proceedings.

**Procedural History[2]**

{¶ 3} On February 13, 2023, K.G. and two of his siblings were removed from Mother's custody pursuant to an ex parte telephonic order. The following day, February 14, 2023, CCDCFS filed a complaint alleging K.G. to be a neglected and dependent child; the Agency also filed a motion for predispositional temporary custody, which the trial court granted that same day.

{¶ 4} On March 30, 2023, a hearing was held before a magistrate who adjudicated K.G. as neglected and dependent. The parties agreed to proceed immediately to disposition, and the magistrate recommended that K.G. be committed to the temporary custody of CCDCFS.

{¶ 5} In an April 26, 2023 judgment entry, the juvenile court adopted the magistrate's decision. The court's judgment included a case plan, which required

---

[1] The juvenile court also terminated the parental rights of K.G.'s Father. Father was incarcerated for the majority of the life of this case in the juvenile court. He was released from custody in July 2025, and the Agency's attempts to reach him were unsuccessful. Father's counsel did appear on his behalf throughout the proceedings. Father has not appealed.

[2] Our resolution of this appeal centers on the trial court's abuse of discretion by not granting a continuance; the facts surrounding K.G.'s removal from Mother's custody are not relevant to making that determination and therefore we do not address them.

Mother to seek services for parenting, housing, and mental health. The permanency plan was for K.G. to be reunited with Mother. In July 2023, the Agency filed an amended case plan. The amended plan included a mental-health assessment for K.G. and also stated a concurrent goal (concurrent with reunification) of identifying a potential relative placement for legal custody. Mother was referred to parenting education and mental-health services. Mother was also referred for supervised visits with K.G.

{¶ 6} In an August 2023 decision, the magistrate recommended that the amended case plan be adopted by the court. The juvenile court adopted and approved the magistrate's decision in September 2023.

{¶ 7} In December 2023, the Agency filed a first extension of temporary custody. The magistrate recommended that the Agency's request be granted, and in February 2024, the trial court adopted the magistrate's recommendation and granted a first extension of temporary custody.

{¶ 8} In May 2024, CCDCFS filed its motion to modify temporary custody to permanent custody. In a December 2024 semi-annual review, the Agency noted that Mother was engaging in mental-health services and had completed parenting classes. Mother's visits with K.G. were changed from supervised visits to unsupervised visits. However, in May 2025, CCDCFS filed another amended case plan in which it recommended that Mother's visitation with K.G. change from unsupervised to supervised; the trial court amended the case plan accordingly.

{¶ 9} K.G. had a guardian ad litem ("GAL"). In his report, the GAL recommended that permanent custody be granted to the Agency. After filing his report, the GAL filed a notice of conflict in which he noted that his recommendation conflicted with K.G.'s wish, which was to be reunified with Mother. The trial court appointed counsel for K.G. due to the conflict between K.G.'s wish to be reunited with Mother and the GAL's recommendation that the Agency be granted permanent custody.

{¶ 10} On June 25, 2025, the trial court set trial for October 21, 2025.

{¶ 11} On October 17, 2025, CCDCFS filed a motion to continue the October 21, 2025 trial. The Agency stated in the motion that a kinship relative, a maternal aunt of K.G., had been approved as a caregiver for the child and the Agency was merely waiting for the return of her fingerprinting for the background check to be completed.

{¶ 12} On the trial date, October 21, 2025, K.G.'s attorney, Mother's attorney, and the GAL joined in the Agency's request for a continuance of the trial to finalize the fingerprinting for the maternal aunt with the aim of her being granted legal custody of K.G. The trial court denied the Agency's motion to continue the trial.[3]

{¶ 13} The matter proceeded to trial with CCDCFS presenting one witness, Carol Beck, the Agency's extended services social worker assigned to the case. At the

---

[3] Father failed to appear for trial, and his counsel made a separate motion to continue so that she could attempt to secure his presence. The juvenile court denied that motion as well.

conclusion of the Agency's case, the parties were afforded an opportunity to question K.G.'s GAL.

{¶ 14} On October 27, 2025, the juvenile court entered the subject judgment granting CCDCFS's motion for permanent custody.

## Assignments of Error

{¶ 15} Mother raises the following three assignments of error for our review:

I. The trial court committed prejudicial error in denying the appellant's request for a continuance of trial where all counsel were in agreement that a short continuance should be granted to consider maternal aunt, C.S.[,] for legal custody of the child, K.G.

II. The trial court's decision to grant permanent custody of the appellant's children [sic] to the CCDCFS was not supported by clear and convincing evidence and thus was not supported by the manifest weight and sufficiency of the evidence.

III. The assigned counsel for the minor child, K.G.[,] was clearly ineffective and prejudicial to K.G.'s wishes and position in this case, so as to warrant a new trial.

## Law and Analysis

**The Juvenile Court Abused Its Discretion by denying the Agency's Motion to Continue the Trial**

{¶ 16} In Mother's first assignment of error, she challenges the trial court's decision denying the Agency's motion for a continuance so that maternal aunt's fingerprinting could be completed.

{¶ 17} A trial court's decision whether to continue a matter is "'entrusted to the broad, sound discretion of the trial judge.'" *In re Ka.C.*, 2015-Ohio-1158, ¶ 13 (8th Dist.), quoting *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). A court abuses its discretion "when a legal rule entrusts a decision to a judge's discretion and the

judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 2020-Ohio-6699, ¶ 19; *see also Johnson v. Abdullah*, 166 2021-Ohio-3304, ¶ 35 (describing the "common understanding of what constitutes an abuse of discretion" as "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority").

{¶ 18} When evaluating a request for a continuance, a court considers the following: (1) the length of the requested delay; (2) whether the parties have requested and received other continuances; (3) the inconvenience to the parties, witnesses, opposing counsel, and the court; (4) whether the requested delay is for legitimate reasons or is merely dilatory, purposeful, or contrived; (5) whether the movant contributed to the circumstances giving rise to the request for a continuance; and (6) any other relevant factors, depending on the unique circumstances of each case. *Unger* at *id.*

{¶ 19} The record demonstrates that, although the Agency filed the motion to continue, the parties, including the GAL, all advocated for granting the motion. In his support for a continuance, the GAL stated:

> Well, anytime that a relative steps up and says that they will — that they create a bond with a child and are willing to take care of basic needs, food, clothing, and shelter, and medical, and schooling, I'm in favor of that. So I would think it would be in [K.G.'s] best interest to . . . grant the motion for a continuance. It sounds like [maternal aunt is] serious about this effort.

(Tr. 6-7.)

{¶ 20} The aunt had been going through the Agency's approval process for one of K.G.'s siblings during the time that Mother was working on her case plan in this case, and the aunt had been fingerprinted but that result had expired. The Agency indicated that the result of the fingerprinting was "the only barrier at this point to legal custody being awarded to her as far as the Agency is concerned." (Tr. 5.) We believe the Agency's statement contradicts the dissent's contention that the Agency "concedes the alternative placement was a speculative endeavor . . . ." (Dissent at fn.1.) It cannot be overstated that *the Agency filed the motion to continue* — it is hard to imagine that the Agency would file a motion to continue for an endeavor it deemed "speculative." The Agency simply does not arrive at the point where it is seeking a continuance for a potential legal custodian without doing its due diligence. The only barrier to the Agency's approval of the aunt was the result of her fingerprint testing. The Agency further indicated that the aunt had visitation with K.G.

{¶ 21} The trial court summarily ruled as follows on the motion: "Upon due consideration, it's denied." (Tr. 5.) The trial court abused its discretion in denying the continuance.

{¶ 22} In considering the factors set forth in *Unger*, 67 Ohio St.2d 65 (1981), the aunt had already been approved by the Agency for placement and the only impediment at the time of CCDCFS's request for a continuance was the result of her fingerprinting. Thus, the continuance would have been a brief one. Further, although the case had been pending for a period of time, the delay was not

attributable to Mother; she had not requested continuances throughout the pendency of the case and the one continuance of the trial — for six months — was at the juvenile court's own initiative.

{¶ 23} Further, as mentioned, other counsel and the GAL joined in the Agency's request for a continuance. There was only witness presented at trial, the extended case worker, so there were not numerous witnesses who would have been inconvenienced by a continuance. And the reason for the continuance was not for an untoward purpose. Rather, it was for the purpose of pursuing an alternative, less severe option to terminating Mother's parental rights.

{¶ 24} The dissent states that, in conducting a review under an abuse-of-discretion standard, we must set aside whether the request for the continuance was "reasonable in our judgment." Dissent, ¶ 1. We understand that we cannot simply substitute our judgment for that of the trial court's judgment. But nonetheless we have to consider what was reasonable under the circumstances of the case, which we believe we have done here. Indeed, relying on *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983), Ohio courts, including this court, have routinely stated that in order to find an abuse of discretion, an appellate court must determine whether the trial court's decision was *unreasonable*, arbitrary, or unconscionable and not merely an error of law or judgment. *Id.* at 219; *see also State v. Gunnels*, 2025-Ohio-5757, ¶ 10 (8th Dist.) (stating that an abuse of discretion implies that the trial court's attitude *unreasonable*, arbitrary, or unconscionable). Moreover, the fourth *Unger* factor — whether the requested delay is for legitimate reasons or is merely dilatory,

purposeful, or contrived — inherently requires consideration of the reasonableness of a request for a continuance. *Unger* at 67.

{¶ 25} We also believe this case is distinguishable from *In re B.V.*, 2025-Ohio-971 (8th Dist.), on which the dissent relies. The mother's attorney in *In re B.V.* requested a continuance on the day of trial because the mother failed to appear; her counsel was unable to explain the reason for her absence, and the agency opposed the motion. Here, the Agency sought the continuance four days before trial, Mother was present at trial (she had consistently participated in the proceedings), and the request was for a legitimate purpose.

{¶ 26} Finally, we are not persuaded by the trial court and dissent's reasoning that the court was "out of time" on the case. The "out-of-time" rationale seems to be disingenuous when the trial was continued by the court for six months and the statutory time of 200 days had already long expired at the time of trial. R.C. 2151.414(A)(2) explicitly provides that the trial court's failure to comply with the statutory time requirements "does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court." We further note that the short continuance the Agency sought was not for Mother to complete her case plan services — she had substantially complied with the plan — but it was the Agency's position that she had not benefitted from the services.

{¶ 27} On this record, the trial court abused its discretion by denying the request to continue the trial. The first assignment of error is sustained. Our

resolution of the first assignment of error renders the remaining assignments of error moot and we do not consider them. *See* App.R. 12(A)(1)(c).

{¶ 28} Judgment reversed, and case remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MICHAEL JOHN RYAN, JUDGE

MARY J. BOYLE, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., DISSENTING:

{¶ 29} I cannot join the majority. K.G. had been in "custodial purgatory" for more than two years by the time of the permanent custody hearing. *See In re P.B.*, 2021-Ohio-414, ¶ 29 (12th Dist.). Mother's argument in this appeal is that the agency's request to continue was reasonable because the agency "was considering" an alternative placement.[4] "When conducting an abuse-of-discretion review, 'an

---

[4] The agency concedes the alternative placement was a speculative endeavor, asking for the continuance four days before trial and after more than two years of

appellate court is not free to substitute its judgment for that of the trial judge.'" *State v. J.B.*, 2026-Ohio-1405, ¶ 13, quoting *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990). Setting aside the fact that whether the request is reasonable in our judgment is not a question to be resolved under the abuse-of-discretion standard, Mother ignores the basis upon which the juvenile court denied the agency's motion. The court expressly concluded that (1) "we are out of time," a tacit reference to time limitations on temporary custody under R.C. 2151.415 (tr. 6); (2) a continuance was not in the best interest of the child (tr. 7); and (3) no relative ever filed a motion to obtain custody of K.G. (tr. 8). None of those reasons have been discussed, much less dispelled. And importantly, although the agency filed the motion to continue, it has since abandoned it in this appeal — expressly acknowledging that the juvenile court was bound by the statutory limitations under R.C. 2151.415(D)(4) such that the temporary custody could not be further extended.

{¶ 30} "R.C. 2151.415(D)(4) prevents a court from ordering temporary custody to continue beyond two years after the date on which the complaint was filed." *In re A.C.*, 2026-Ohio-1661, ¶ 52 (8th Dist.). In general, a juvenile court does not abuse its discretion in applying R.C. 2151.415(D)(4) as the basis to deny continuances of the permanent-custody proceedings. *See, e.g., In re B.V.*, 2025-Ohio-971, ¶ 7 (8th Dist.) (concluding that the juvenile court's conclusion that "the case was 'well beyond the two years,' the motion for permanent custody had been

_____

temporary custody because "it was considering a relative as an alternative to permanent custody."

pending since February 2024, and it was not in the children's best interest to continue the matter"); *In re G.H.*, 2025-Ohio-5317, ¶ 13 (9th Dist.) (no abuse of discretion found because "[a]t the time of the November 2024 hearing, the case had been pending for 27 months, three months beyond the statutory time period anticipated for the resolution of such custody cases").  Mother does not provide any reason to distinguish this authority.

{¶ 31} For this reason, I dissent.  I would overrule the first assignment of error based on the above authority and resolve the remaining arguments presented in this appeal.